COLVIN INNISS BERT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bert v. Commissioner
Docket No. 38641-86
United States Tax Court
T.C. Memo 1989-503; 1989 Tax Ct. Memo LEXIS 506; 58 T.C.M. (CCH) 144; T.C.M. (RIA) 89503; September 13, 1989
L. Paige Marvel, for the petitioner. Robert E. Williams, Jr., for the respondent. WELLS
MEMORANDUM FINDINGS OF FACT AND OPINION WELLS, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Year
Deficiency
Additions to Tax Under Sections [1]
6653(b)(1)
6653(b)(2)
6661
1982
$ 2,186
$ 1,093 *
- 0 -
1983
5,879
2,940 *
$ 588
1984
3,186
1,593 *
- 0 -
*508 The issues for decision are: (1) whether petitioner is entitled to deductions for certain expenses claimed on Schedule C of his tax returns for the taxable years in issue; (2) whether petitioner is entitled to any deduction for excess itemized deductions for the taxable years in issue; (3) whether petitioner is liable for the additions to tax for fraud under section 6653(b) for the taxable years in issue; and (4) whether petitioner is liable for the addition to tax for a substantial understatement of tax under section 6661 for taxable year 1983. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner received a B.S. degree in electrical engineering in 1977 from Drexel University. After graduating from college, petitioner accepted an engineering position with Westinghouse *509 Electric Corporation ("Westinghouse"). He was employed by Westinghouse as an engineer until October 1981, when he resigned his position. From March until June of 1982, petitioner held a position as an engineer with International Business Machines, Inc. ("IBM"). In October 1982, petitioner accepted a position as an engineer in the Advanced Systems Department at Westinghouse, where he remained until he was fired in 1984. After being fired from Westinghouse, petitioner later in 1984 accepted a position as an engineer with Allied-Bendix Aerospace, Bendix Field Engineering Corporation ("Bendix"). During the years in issue, petitioner's income from Westinghouse, IBM, and Bendix was reported as W-2 (salary) income on his tax returns and was in the following amounts: Westinghouse
IBM
Bendix
1982
$ 6,192.93
$ 9,192.24
- 0 -
1983
32,374.90
- 0 -
- 0 -
1984
18,836.29
- 0 -
$ 2,158.00
In 1984, petitioner also received unemployment compensation from the State of Maryland which he reported on his 1984 Federal income tax return. In 1982, IBM and Westinghouse withheld Federal income taxes from petitioner's compensation. *510 Westinghouse continued to withhold Federal income tax from petitioner's compensation during the early part of 1983, but ceased such withholding after petitioner filed a Form W-4 on which he claimed to be exempt from withholding. Petitioner had no state or Federal income taxes withheld from his compensation in 1984. During all of the years in issue, IBM, Westinghouse, and Bendix provided petitioner with health insurance and withheld Social Security tax from his compensation. Schedule C Deductions
Each of petitioner's tax returns for the years 1982 through 1984 included a Schedule C (Profit or (Loss) From Profession or Business) which reported no income but which claimed the following as deductible expenses (rounded to the nearest dollar): 1982
1983
1984
Advertising
$    614
$    450
$     80
Bank Charges, Dues, & Publications
93
258
952
Car & Truck Expenses
311
1,389
1,031
Property expenses under sec. 179
2,296
- 0 -
- 0 -
Insurance
273
300
457
Interest
973
1,300
560
Laundry
33
245
130
Legal & Professional
820
390
5,435
Office Supplies & Postage
504
6,000
1,056
Rent
3,259
4,624
3,457
Travel & Entertainment
3,211
2,031
2,399
Utilities & Telephone
936
1,016
2,126
Total
$ 13,323
$ 18,003
$ 17,683
*511 For each year, petitioner deducted the sum of the expenses listed in Schedule C as losses incurred in a business. On the Schedules C, petitioner listed his business name as "Personal Consultant," his main business activity as either "Personal Consultant" or "Technical Writing," and his product as "Writing Materials." During the years in issue, petitioner maintained various log books, journals, and notebooks which contained receipts for many of the expenses listed on the Schedules C, as well as various handwritten and typewritten articles authored by petitioner and other documents. Petitioner also had business cards printed on which he held himself out as "Bert Colvin," a "Personal Consultant-Writing Service," or as "Colvin Bert" of "The Professional Way - Career/Life Planning." On brief petitioner asserts that he was engaged in "engineering consulting." Five articles written by petitioner were published during 1982, but petitioner understood at the time the articles were published that the publisher would not pay him for the articles. The five published articles were entitled "Woman," "Dream," "My Man," "Money," and "Beauty and the Beast." During the years in issue, petitioner *512 also wrote at least 39 other articles or poems, for which he received no remuneration. Some of those articles were titled "The Big Boobs of America," "Dodge City, USA," "Future Fashions," "Where Good is Bad and Bad is Better than Good," "Who Controls the World," "'Damn' You Look Good," and "Too Many Me." "The Big Boobs of America" is a one-page paragraph the theme of which is that the "average taxpayer" must pay for the poor management of large corporations who avoid being taxed on their profits by "writing off business losses that result from poor management decisions." Several of petitioner's other articles deal with his relationship to women at various points in his life, and a theme noticeable in some of these works is petitioner's relationship with his mother, as reflected in the statements "I couldn't be the faithful husband to my wife and a lover for my mother at the same time" and "I couldn't turn my back on myself, which I consider to be my mother because I am a part of her and my greatest desire is to please my mother" [from "My Man" - a different article from the one published with the same name]; and "I loved [a girl petitioner's age] from a distance just like my *513 true mother loved me" and "I lost my interest in women after my heart was broken the first time. This resulted in my losing my third love, my mother" [from "The Love I Lost"]. Other articles by petitioner contain the statements "The young girls of America, with all the emphasis on sex, desire to do those things they were naturally put here to do," and "Men of society today are bending to women at an ever increasing rate. "I'm glad there are still some true woman and men left, but their numbers are getting scarce" [from "Abortion"]; "the source of the fire that I couldn't find as the sexy and attractive motion of LA's behind" [from "The Lily of LA"]; "Give me a woman when I need to get down Give me a woman that is sexy and round" [from "Woman" - not the published article]; and "You are what I call phat, p-h-a-t, fat" [from "'Damn' You Look Good"]. Itemized Deductions
On petitioner's tax returns for 1982 and 1983, petitioner reported itemized deductions on Schedule A as follows (rounded to the nearest dollar): 1982 1983
Medical Deductions
$    79
$ - 0 -
State Income Tax
981
354 Sales Tax (from tables)
183
137 Charge account interest
368
- 0 -
Cash Contributions
1,500
5,000
Total Itemized Deductions
$ 3,111
$ 5,491
*514 On his 1984 tax return, petitioner reported no itemized deductions. During the years in issue, the zero bracket amount for a single person was $ 2,300 (section 63(d)), and petitioner properly subtracted that amount from total itemized deductions in calculating the "excess itemized deductions" deductible in computing "taxable income" on his 1982 and 1983 tax returns (section 63(c)). Petitioner has documentation to verify interest of $ 358.06, $ 1,301.18, and $ 413.24 paid by him in 1982, 1983, and 1984, respectively. (Petitioner's interest expense deductions for 1983 and 1984 were claimed on Schedule C of his tax returns for those years.) During the years in issue, petitioner served as a "big brother" in a program sponsored by Big Brothers & Big Sisters of Central Maryland, Inc., which at all relevant times was a charitable organization described in section 170(c). As a big brother, petitioner purchased a variety of items for his "little brother," Perris Ellis, as well as for Perris' sisters. Petitioner also spent money for admission fees and food for himself, Perris, and sometimes Perris' sisters when they went on outings together to, for example, amusement parks. Petitioner *515 cited these cash outlays in support of his claimed deductions for "cash contributions," but did not submit any specific documentation of the expenditures. OPINION Respondent contends that petitioner is not entitled to deduct the expenses claimed on his Schedules C and the excess itemized deductions claimed on his tax returns for the years in issue, that petitioner is liable for the addition to tax for fraud for those years, and that petitioner is liable for the addition to tax for a substantial understatement for the taxable year 1983. [2] We shall discuss each of those issues separately. *516 Schedule C Deductions
Section 162(a) generally allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." As grounds for disallowing petitioner's Schedule C deductions, the notice of deficiency issued to petitioner states that petitioner had not shown that the "amounts were ordinary and necessary expenses and allowable under section 162 of the Internal Revenue Code." Respondent contends that the expenses petitioner claimed on Schedule C of his tax returns for the taxable years in issue are not "ordinary and necessary" business expenses under section 162, and further contends that, before any such expenses may be properly deductible under section 162, petitioner must meet the burden of proving that he was engaged in a "trade or business" during the taxable years in issue. Petitioner contends that he only must prove that the expenses were "ordinary and necessary," because the statutory notice did not raise the "trade or business" issue. As a general rule, a notice of deficiency carries a presumption of correctness that places the burden of proof on matters raised therein *517 on the taxpayer. Welch v. Helvering, 790 U.S. 111, 115 (1933); Rule 142(a). If a new issue is raised by respondent for the first time on brief, the burden of proof with respect to that issue is to be borne by him, unless it is an "assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency." Rule 142(a); Achiro v. Commissioner, 77 T.C. 881, 890 (1981); Estate of Falese v. Commissioner, 58 T.C. 895, 899 (1972). Respondent asserts that, because section 162(a) allows deductions for expenses paid or incurred in carrying on any "trade or business," the language of the notice of deficiency necessarily raised the "trade or business" issue, and petitioner bears the burden of proof on this issue under the general rule. We agree with respondent that the quoted language from the notice of deficiency was adequate to put petitioner on notice that the trade or business issue was an issue to be litigated. Indeed petitioner does not claim any prejudice or surprise. Cf. *518 Pagel, Inc. v. Commissioner, 91 T.C. 200, 210-213 (1988), on appeal (8th Cir., Dec. 12, 1988) Thus, we must decide whether petitioner has established that he was engaged in a trade or business during the years in issue. The question of whether a taxpayer is engaged in a trade or business must be decided upon the facts in each case. Commissioner v. Groetzinger, 480 U.S. 23, 36 (1987). In Groetzinger, the Supreme Court stated: We accept the fact that to be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit. A sporadic activity, a hobby, or an amusement diversion does not qualify. 480 U.S. at 35. Petitioner contends that he was engaged in the trade or business of engineering and personal consulting and technical writing. Respondent contends that petitioner's activities did not rise to the level of a trade or business. We agree with respondent. With respect to petitioner's writing activities, although five of his articles were published during 1982, none of petitioner's *519 articles generated any revenue. The manner in which petitioner carried on his activities did not evidence that he was in a trade or business, as he did not keep adequate books and records. Petitioner's explanations of the business purpose of his expenses were vague, incomplete or nonexistent. Moreover, we are convinced that petitioner's articles were written for personal reasons rather than for profit. We believe petitioner's article, "The Big Boobs of America," for example, was no more than a medium for petitioner to let off steam about his views of the fairness of the Federal income tax system. Other samples of petitioner's writings resemble diary entries. With respect to petitioner's engineering and/or personal consulting activities, the only renumeration received by petitioner was his W-2 wage earnings from Westinghouse, IBM and Bendix. We find that petitioner performed no "consulting" services other than in connection with his employment with Westinghouse, IBM and Bendix. None of his other activities appear to have been in furtherance of any trade or business. The only other engineering-related activities in which petitioner engaged outside of his employment with Westinghouse, *520 IBM and Bendix appear to be with respect to petitioner's search for employment. Such activities are not trade or business activities. Moreover, petitioner has not shown how the claimed Schedule C expenses were connected with or in furtherance of any trade or business. Petitioner contends that the fact that he was engaged in a trade or business is evidenced by the amount of time he spent on his activities and the amount of money he invested. Petitioner argues that renting a second apartment, obtaining post office boxes, investing in professional publications, and interviewing are expenses which are typical of most businesses. Standing alone, however, petitioner's investment of time and money is not sufficient to show that he was engaged in a trade or business. The only other evidence that petitioner offers on the trade or business issue is his own testimony regarding his intent, but we are not required to accept petitioner's self-serving testimony as gospel. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). We find that petitioner's testimony regarding his intent to carry on a trade or business as a writer and consultant is implausible and unpersuasive. After *521 carefully considering the record before us, we find that none of petitioner's activities with respect to which deductions were claimed rose to the level of a trade or business. In sum, we think that petitioner was misguided in his belief that he was carrying on a trade or business with respect to any of his writing activities and that the expenses he claimed on Schedule C of his returns for the years in issue were personal. The costs for which petitioner seeks a deduction, by and large, are merely the nondeductible personal costs of living that all individual taxpayers have. Section 262. Accordingly, we hold that petitioner is not entitled to any deduction under section 162. Having held that none of petitioner's activities are to be treated as a trade or business, we need not address the issue of whether petitioner's expenses were ordinary and necessary. Itemized Deductions
After concessions, the only remaining item over which the parties disagree relates to whether petitioner is entitled to a charitable contribution deduction for certain unreimbursed expenses in connection with his work as a volunteer in the "big brothers" program. [3] In support of his position, *522 petitioner relies exclusively upon Revenue Ruling 70-519, 1970-2 C.B. 62, in which the Internal Revenue Service allowed charitable contribution deductions for out-of-pocket unreimbursed expenses, such as admissions costs and meals, incurred by a volunteer of a charitable organization formed to help reduce juvenile delinquency by providing adult role models to boys who lack wholesome adult male companionship. Petitioner contends that the facts of that ruling are identical to the instant case and that he incurred considerable out-of-pocket expenses in connection with his charitable work. The parties agree that the "Big Brothers" organization is a charitable organization to which tax-deductible contributions may be made. Deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934). Petitioner bears the burden of proving both his entitlement to the claimed deductions and the correctness of the *523 claimed amounts. Welch v. Helvering, 290 U.S. at 115; Rule 142(a). Respondent contends that petitioner has not substantiated the amounts petitioner claimed were spent in furtherance of the "big brothers" program. We agree with respondent. Petitioner has not pointed to any specific documentary evidence that would substantiate the amounts he spent. [4] Petitioner's testimony on the amounts he spent and the purpose for his expenditures lacked specificity, and the record is insufficient for the purpose of allowing us to estimate the amount of the deduction, if any, to which petitioner would be entitled. The rule set out in Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), is therefore inapplicable. Accordingly, we hold that petitioner is not entitled to deduct the claimed expenditures with respect to the "big brothers" *524 program. Fraud Additions
Respondent contends that petitioner's underpayments of Federal income tax for the years in issue are due to fraud. As in effect during the years in issue, section 6653(b) provides for an addition to tax of 50 percent of the amount of an underpayment if any part of the underpayment is due to fraud. Respondent has the burden of proving, by clear and convincing evidence, that some part of an underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Drobny v. Commissioner, 86 T.C. 1326 (1986); Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. *525 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner , 55 T.C. 85, 92 (1970). Fraud may be proved, however, by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stephenson v. Commissioner, 79 T.C. 995, 1005-1006 (1982), affd. 748 F.2d 331 (6th Cir. 1984); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).
Respondent relies upon petitioner's entire course of conduct to show fraud, including petitioner's inadequate records, willingness to mislead or conceal evidence from respondent, taking of improper deductions, and lack of credibility. As evidence of fraud respondent cites the following: *526 petitioner authored an article entitled "Big Boobs of America" which respondent maintains shows petitioner's intent to evade taxes; petitioner allegedly made false statements under oath with respect to various documents; petitioner presented information to respondent allegedly designed or intended to mislead or conceal the true nature of items represented by receipts; and petitioner allegedly deducted nonbusiness items as business expenses during each of the years at issue. Petitioner disputes respondent's contentions and maintains that no part of the alleged underpayments was due to fraud. Respondent depicts petitioner as an individual who intended to defraud the government by pretending to be in a trade or business when petitioner knew and believed that he was not. We, however, cannot agree with respondent's depiction. As previously noted, we believe that petitioner was merely misguided in his belief that he was engaged in a trade or business. Moreover, the indicia of fraud relied upon by respondent do not convince us that petitioner had the requisite fraudulent intent. The first indicium suggested by respondent is petitioner's article entitled "The Big Boobs of America. *527 " In that article, petitioner asserts that big corporations avoid paying large amounts of taxes by writing off business losses resulting from poor management while individual taxpayers may not. Yet, petitioner makes it very clear in the article that "People should not cheat on their taxes" and emphasizes that the corporate behavior about which he complains hurts not only the government but the average taxpayer as well. We do not find such statements indicative of fraud. Next respondent cites the alleged false statements made by petitioner in various documents. We accept, however, petitioner's explanation of his statements and actions as plausible. Respondent claims, for example, that petitioner "falsely" checked the filing status of "single" on his 1984 return. We find petitioner's testimony regarding his attempts to annul the marriage, the fact that he was not married in a religious ceremony, and the fact that he never lived with his wife on a permanent basis sufficient to negate any inference of fraud or deception in regard to his filing status. We similarly find petitioner's explanation of his claim of "exempt" status on Form W-4 credible under the circumstances. While we *528 do not condone petitioner's apparent naivete in his answers to certain of respondent's interrogatories, we find that respondent has not shown clear and convincing evidence of fraud. Respondent next contends that petitioner presented information designed or intended to mislead or conceal the true facts. Respondent points to certain receipts which petitioner submitted to verify business expenses but which appeared to be non-business items. We find that while petitioner may have been negligent in believing that the purchases represented by those receipts were deductible, such negligence, even if gross negligence, does not justify a fraud addition. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968). Mere suspicion of fraud is insufficient to sustain a finding of fraud. Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). Based upon the record in the instant case, we conclude that respondent has failed to prove fraud by clear and convincing evidence. Accordingly, petitioner is not liable for the addition to tax for fraud. Section 6661 Addition
Respondent contends that petitioner is liable for the section 6661 addition to tax for taxable *529 year 1983. Petitioner contends that the section 6661 addition does not apply because petitioner properly deducted his claimed expenses on Schedule C of his 1983 tax return. Section 6661 provides for an addition to tax where income tax is understated by the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Section 6661(a) and (b)(1)(A). If the concessions by respondent for taxable year 1983 do not bring the underpayment below these quantitative requirements, section 6661 will apply unless there is or was "substantial authority" for petitioner's treatment of the items in issue (section 6661(b)(2)(B)(i)) or unless the relevant facts relating to the tax treatment of such items were adequately disclosed on his return or in a statement attached thereto (section 6661(b)(2)(B)(ii)). Antonides v. Commissioner, 91 T.C. 686, 701 (1988). Petitioner has the burden of proving that there was either substantial authority or adequate disclosure within the meaning of section 6661. Rule 142(a). Petitioner does not argue or offer any proof that there was adequate disclosure or that there is or was substantial authority; he only argues that the claimed *530 deductions are correct. We interpret petitioner's lack of argument as a concession that, if petitioner's claimed deductions for the taxable year 1983 are not sustained, the section 6661 addition applies. Therefore, given our holdings above, petitioner is liable for the addition. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. * 50 percent of the interest due on the determined deficiency.↩
2. The parties stipulated that an alternative issue exists in the event that the Court finds that petitioner's claimed Schedule C expenses are not deductible under section 162↩, namely, whether certain of such expenses are deductible as itemized expenses on Schedule A. Respondent has conceded that certain of such expenses are deductible on Schedule A if petitioner's itemized deductions exceed the zero bracket amount. If such deductions do exceed the zero bracket amount, they will be included in the Rule 155 computation that the Court will order herein. Petitioner presented no additional argument in his briefs on this issue and therefore, except to the extent conceded by respondent, the Court considers petitioner to be in agreement with respondent on this issue.
3. Petitioner made no reference in his briefs to Engineering Pipeline, Youth In Technology, or church sponsored activities for which he took miscellaneous deductions. We therefore consider such deductions abandoned.↩
4. The only specific documentary evidence mentioned by petitioner in this regard is a Hermann's receipt dated 5/25/82, but petitioner fails to give any reference to an exhibit or any other indication of where that receipt can be located in the three storage boxes of receipts and other evidence comprising the record in this case.↩