81 A.3d 460

**Colvin I. BERT**

v.

**COMPTROLLER OF THE TREASURY.**

**No. 2560, Sept. Term, 2009.**

Court of Special Appeals of Maryland.

Dec. 17, 2013.

246

Colvin I. Bert, Ellicott City, MD, Pro Se, for Appellant.

Michael J. Salem (Douglas F. Gansler, Atty. Gen., on the brief), Annapolis, MD, for Appellee.

Panel: KRAUSER, C.J., ARRIE W. DAVIS, (Retired, Specially Assigned), JAMES P. SALMON, (Retired, Specially Assigned), JJ.

DAVIS, J.

This is a tax protestor case.[1] In his appeal from the judgment of the Circuit Court for Howard County (McCrone,

J.), Colvin I. Bert, appellant, seeks further judicial review of the decision of the Maryland Tax Court.[2] The circuit court affirmed the decision of the Tax Court, which in turn had upheld tax assessments and penalties regarding the income tax years of 1999, 2000, 2001, 2002 and 2004. Appellant, aggrieved by the decision of that court, seeks our review of a host of issues.[3] Recast to facilitate and clarify appellate review, the pertinent issues on appeal are as follows:

---

1. One commentator has defined "a tax protestor ... as a taxpayer-litigant who, in disputing his or her liability for taxes or seeking to delay or prevent collection of taxes, raises arguments based on discredited or irrational premises about the tax laws." John B. Snyder, III, *Barbarians at the Gate?: The Law of Frivolity As Illuminated by Pro Se Tax Protest Cases*, 54 WAYNE L. REV. 1249, 1270 (2008). A more recent view has been to characterize such individuals as "tax defiers." *See* Nathan J. Hochman, *Tax Defiers and the Tax Gap: Stopping "Frivolous Squared" Before It Spreads*, 20 STAN. L. & POL'Y. REV. 69 (2009) ("Over the last fifty years, the term 'tax protestor' has devolved from describing those individuals engaged in legally valid and protected conduct to those individuals engaged in illegitimate tax defiance[.]"). Appellant may not style himself as either a "protestor" or "defier," but his use of language and arguments that have been unsuccessfully advanced by those embracing these characteristics places him firmly within their company. Indeed, the Maryland Tax Court observed during appellant's appeal hearing:

 > You stated that you talked to some individual that you met at some function who assured you that what you were doing was a hundred percent right, but you can't remember his name. I think that this person is misleading you at best.

 This suggests that appellant found common cause with another person who holds similar views and has spread the "gospel" of tax defiance. In his article on tax defiance, Mr. Hochman observes:

 > The tax defiers have evolved their distribution network for their positions over the years, from initially peddling their products to a relatively small audience in books, then audiotapes, videotapes, and DVDs, to reaching out to mass audiences through websites and blogs on the Internet that can be accessed with the click of a mouse.

 *Tax Defiers and the Tax Gap* at 70.

2. *See* Md.Code (1988, 2010), § 13–510 of the Tax General Article ("TG") (authorizes appeals to the Tax Court). See TG § 13–532 (judicial review).

3. Appellant presents "Ten (10) Major Issues" for our consideration:

1. Whether the Maryland Tax Court erred by concluding that Mr. Bert was not entitled to exclude from his income for tax year 2004 compensation that he had received from his employers, and whether the Maryland Tax Court erred by affirming the assessment of frivolous return penalties for tax years 1999, 2000, 2001, 2002 and 2004.

2. Whether the Maryland Tax Court abridged appellant's privilege against self-incrimination or due process

---

1. Did the Notice of Final Determination issued by the Comptroller's Hearing Officer deny Bert his due process rights when it affirmed the assessments of the Comptroller?
2. Did the MTC deny the petitioner (Bert) his due process rights when the MTC failed to review the final determination of the Comptroller at a *de novo* hearing pursuant to TG § 13–510?
3. Did the MTC deny Bert his due process rights when the MTC threatened to dismiss Bert's appeal if he didn't agree to testify before the MTC, despite the fact that none of the parties who made the determination against Bert were in court to testify?
4. Did the MTC erroneously interpret TG § 13–705(b) when it orally ruled that a TG § 13–701 penalty was not a prerequisite to a TG § 13–705(a) penalty?
5. Did the MTC err when it ordered on April 25, 2008 that the assessment levied by the Comptroller of the Treasury is affirmed for the tax years in question?
6. Did the MTC err when it issued a generic order (lacking applicable law and conclusions of fact) affirming an anonymous decision of a Comptroller employee?
7. Did Comptroller employee, Bormuth[,] have authority to adjust petitioner's state income tax returns and assess frivolous return penalties?
8. Did Comptroller present clear and convincing evidence to support his claim that petitioner filed frivolous returns for tax periods 1999, 2000, 2001, 2002 and 2004 pursuant to TG § 13–705(a)?
9. Did the Circuit Court err when it affirmed the order of the MTC?
10. Was the Circuit Court judge bias and prejudicial when he summarily ignored or dismissed all of Bert's preliminary motions?

This latter contention is not unusual. "If a court rejects a tax protest argument, tax protestors are as likely to blame the judge as to blame the government litigant opposing the argument." John B. Snyder, III, *Barbarians at the Gate?: The Law of Frivolity As Illuminated by Pro Se Tax Protest Cases*, 54 Wayne L.Rev. 1249, 1274 (2008). On the record before us, we discern no basis for appellant's claim of bias, and reject this complaint.

rights, or otherwise erred in the conduct of its statutory review.

For the reasons set forth below, we shall affirm.

## BACKGROUND

This dispute between appellant and the Comptroller of Maryland involves appellant's filings for tax years 1999 through 2002 and 2004.[4] We set forth pertinent facts related to each year.

## *Tax Years in Question*

### 1999

On July 31, 2000, appellant filed a Maryland Tax Form 503 for calendar year 1999. He attached a Form W–2 from the OAO Corporation in Greenbelt that reported wages in the amount of $79,043.25, and a Form 1099–G that reported unemployment compensation in the amount of $250 from the State of Maryland. On the 1999 tax filing, appellant repre-

---

**4.** Appellant's efforts to avoid his tax obligations have been the subject of numerous decisions by this and other courts. *See Bert v. Comptroller,* No. 0003, Sept. Term 2002 (filed March 27, 2003) (1995 through 1999 tax years—ruling on procedural grounds for failure to exhaust administrative remedies); *Bert v. Comptroller,* No. 272, Sept. Term 2002 (filed April 3, 2003) (remanded for further proceedings); *Bert v. Comptroller,* No. 428, Sept. Term 2002 (filed June 13, 2003) (1993 through 1997 tax years—appellant filed "zero returns"—appeal dismissed on procedural grounds), *cert. denied,* 378 Md. 614, 837 A.2d 926 (2003); *Bert v. Comptroller,* No. 2206, Sept. Term 2003 (filed Nov. 3, 2004) (1998 tax year—interlocutory appeal dismissed); *Bert v. Comptroller,* No. 0071, Sept. Term 2006 (filed Feb. 26, 2007) (1998 tax year), *cert. denied,* 399 Md. 592, 925 A.2d 632 (2007); *Bert v. Comptroller,* No. 1102, Sept. Term 2006 (filed Oct. 17, 2007) (2001 and 2002 tax years); *Bert v. Comptroller,* No. 2131, Sept. Term 2007 (filed Nov. 24, 2008) (2003 tax year), *cert. denied,* 408 Md. 149, 968 A.2d 1065 *cert. denied,* 558 U.S. 948, 130 S.Ct. 425, 175 L.Ed.2d 272 (2009); *Bert v. Comptroller,* No. 1767, Sept. Term 2011 (filed May 21, 2013) (2005 tax year); *Bert v. Comptroller,* No. 1772, Sept. Term 2009 (filed July 26, 2013) (2001 and 2002 tax years). *See also Bert v. Comm'r,* T.C. Memo 1989–503, 58 T.C.M. (CCH) 144, 1989 WL 104231 (1989); *Bert v. Secretary of the Treasury,* 2003 U.S. Dist LEXIS 20840, 92 A.F.T.R.2d (RIA) 6968 (D.Md. Oct. 22, 2003), *aff'd,* 97 Fed.Appx. 451 (4th Cir.2004), *cert. denied sub nom. Bert v. Snow,* 543 U.S. 1094, 125 S.Ct. 976, 160 L.Ed.2d 907 & 544 U.S. 957, 125 S.Ct. 1699, 161 L.Ed.2d 540 (2005).

sented that his reportable net income was "$0.00." On October 3, 2005, appellant filed an amended Maryland Tax Form 502X for the calendar year 1999, accompanied by an IRS Form 4852, "Substitute for Form W–2," that reported his wages from OAO Corporation to be "$0.00." [5] Appellant represented on the Form 502X that the adjusted gross income from the federal return was also "$0.00." On the Form 4852, appellant explained the change in income:

> Company provided records and statutory language behind IRC sections 3401 and 3121 and others. Request, but the company refuses to issue forms correctly listing payments of "wages as defined in 3401(a) and 3121(a)" for fear of IRS retaliation. The amounts listed withheld on the W–2 it submitted are correct, however.[6]

To explain his amended Maryland 1999 return, appellant represented:

> Submitting Form 4852. Original W–2 submitted with return was in error. Employer issued forms incorrectly listing payments of wages as defined in IRC Sections 3401(a) and 3121(a). However, withholding amounts on W–2 are correct.

---

**5.** A Form 4852 "serves as a substitute for Forms W–2, W–2c, and 1099–R and is completed by taxpayers … when (a) their employer or payer does not give them a Form W–2 or Form 1099–R, or (b) when an employer or payer has issued an incorrect Form W–2 or Form 1099–R." *Lacey v. Indiana Dep't of State Revenue*, 948 N.E.2d 878 n. 2 (Ind.Tax 2011) (citation and internal quotation marks omitted).

**6.** Nearly identical language has been employed in other cases where the taxpayer has made frivolous filings. *See, e.g., Lindberg v. CIR*, T.C. Memo 2010–67, 2010 WL 1330343 (Tax Court 2010) ("Requested, but the company refuses to issue forms correctly listing payments 'wages as defined in 3401(a) and 3121(a)' for fear of IRS retaliation. The amounts listed as withheld on the W–2 it submitted are correct, however."). *See Teeters v. CIR*, T.C. Memo 2010–244, 2010 WL 4456155, *2 (Tax Court 2010). *See also Waltner v. United States*, 98 Fed.Cl. 737 (2011), *aff'd*, 679 F.3d 1329 (Fed.Cir.), *cert. denied*, —— U.S. ——, 133 S.Ct. 319, 184 L.Ed.2d 155 (2012); *Kehmeier v. United States*, 95 Fed.Cl. 442, 444 (2010) (individual explained withholdings on substitute W–2 and 1099–R forms by stating "company refuses to state the correct amount of taxable 'wages' paid.").

## 2000

On April 15, 2004, appellant filed a Maryland Tax Form 503 for calendar year 2000. The Form 503 listed appellant's federal adjusted gross income from the federal tax return for that year as $2,000.[7] Appellant then filed an amended Form 502X for calendar year 2000 on a Form 502X that was signed on October 4, 2005. This filing was accompanied by four W–2 forms that reported a total of $81,680.69 in salary or wages for 2000.[8] Appellant also received $2,000 in unemployment compensation in calendar year 2000.

On October 4, 2005, appellant filed what purported to be an amended Maryland Tax Return on Form 502X for calendar year 2000. This filing was accompanied by four self-generated Forms 4852, each of which reported wages in the amount of

---

7. Appellant used a Form 503 for 2003 to file the 2000 return. Notwithstanding the fact that appellant had signed the form and crossed out "2003" and wrote "2000," he objected to the admission of the 2000 report in the hearing before the Tax Court:

MR. LANGBAUM: The next exhibit will be the original return for the year 2000. . . . No. 3, even though it is on a form that says 2003, is Mr. Bert's Maryland Income Tax Return for the year 2000.
MR. BERT: I object, Your Honor.
JUDGE SILBERG: Because?
MR. BERT: Because it doesn't say 2000, it says 2003.
The Comptroller's counsel was then required to authenticate the return with the aid of direct testimony of a Comptroller employee. Appellant was persistent:
MR. LANGBAUM: I would offer Exhibit 3 into evidence, Your Honor.
MR. BERT: And I say, I object.
JUDGE SILBERG: Did you sign the document?
MR. BERT: Yes, that's my signature on this document.
JUDGE SILBERG: Then . . .
MR. BERT: The question he asked, sir, was this . . .
JUDGE SILBERG: Then the Court—The Court will accept the document into evidence and then we'll listen to your . . . testimony[.]
\* \* \*
It is a form you filed?
MR. BERT: Yes.
JUDGE SILBERG: Thank you.
Then the Court will accept the document.

8. OAO Corporation—$4,885.65; Data Computer Corp.—$53,488.04; IC USA Inc.—6,875.00; and Elite Technical Services, Inc.—16,432.00.

"$0.00." On the Form 502X filing, appellant represented that his federal adjusted gross income for calendar year 2000 was $2,000, the amount he received as unemployment compensation.

## 2001

On October 5, 2005, appellant signed a purported Maryland Tax Return for calendar year 2001 and filed the Form 502 on that date or thereafter. He reported his adjusted gross income for that year as "$0.00," and claimed a tax refund of $5,504.12. For 2001, the Data Computer Corporation reported that appellant had received compensation in the amount of $87,091.12 as reflected in the Form W–2 that was issued by that employer. Notwithstanding, appellant's self-generated Form 4852 reported his wages from Data Computer Corporation as "$0.00."

## 2002

On October 7, 2005, appellant filed a Maryland Tax Form 502 for the calendar year 2002 and reported on this form an adjusted gross income from the federal return of "$0.00." He also claimed a tax refund of $5,985.71 and attached a self-generated Form 4852 that represented that his wages from Data Computer Corporation were "$0.00." The Data Computer Corporation W–2 for this period reported that appellant's wages were $91,031.21.

## 2004

This pattern repeated itself on October 12, 2005, when appellant signed and, shortly thereafter, filed a Maryland Tax Form 503 for calendar year 2004. Although the W–2 form that had been issued by Data Computer Corporation reported appellant's wages at $93,577.88, his self-generated Form 4852 represented that he had received no wages from this company that year.

### *Comptroller's Actions*

In 2006, the Comptroller acted on appellant's tax filings. On March 27, 2006, the Comptroller sent appellant a notice of income tax assessment with respect to the 2004 tax year,

followed on March 31 by a similar assessment notice that addressed the tax years of 1999, 2000, 2001 and 2004.[9] In these assessments, the Comptroller advised appellant that the tax returns in question were each incorrect and assessed a $500 frivolous return penalty for each tax year in question.[10] The Comptroller also recomputed appellant's 2004 income.

Appellant objected to these assessments and the Comptroller convened an informal hearing on July 10, 2006. On July

---

9. "In [the IRC] and tax law generally, an assessment is closely tied to the collection of a tax, *i.e.*, the assessment is the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). "An assessment is the Comptroller's official estimate of the amount of a taxpayer's tax liability and/or deficiency." *Brown v. Comptroller of Treasury*, 130 Md.App. 526, 542, 747 A.2d 232 (2000).

10. The Notice of Income Tax Assessment, dated March 27, 2006, provided in part:

> Dear Mr. Bert:
> You have submitted a Maryland income tax return for 2004 and have indicated that wages are not income subject to taxation.
> This is to advise you that courts have consistently held that wages are taxable income. Accordingly, your return has been adjusted to include the income. Also, after making the appropriate calculations, the following assessment is made pursuant to § 13–401 and § 13–705 of the Tax–General Article of the Annotated Code of Maryland:

> | | |
> |---|---|
> | Corrected Refund | $ 39.43 |
> | Penalty | $500.00 |
> | Total Due | $460.57 |

> * * *

The Notice of Income Tax Assessment for "1999, 2000 amended 2001, 2002," dated March 31, 2006, imposed penalties for filing frivolous returns, adjusted the Maryland withholding for one tax year, and relevantly provided:

> Upon review of your Maryland income tax returns for the above noted years, it has been determined that the tax reported is substantially incorrect and reflects a position that is frivolous since the position has no legal basis. Therefore, the original assessments made by this office will remain in effect. Please note, the 2001 return has been adjusted to allow Maryland withholding of $5504.12.
> In addition, pursuant to the provisions of the Tax–General Article § 13–705, the following assessment is being made for the filing of a frivolous income tax return:

> | | |
> |---|---|
> | Penalty | $500.00 (each year) |
> | Total Due | $2000.00 |

Each Notice informed appellant of his appeal rights.

23, 2007, the Comptroller issued a "Notice of Final Determination" with respect to the tax assessments for Tax Years 1999 through 2002. In this Notice, the Comptroller also upheld the adjustments to appellant's 2004 filing. The Notice of Final Determination relevantly provided:

This is the Comptroller's final determination, on your request for revision of the income tax assessments, issued on March 31, 2006 for tax years 1999, 2000, 2001, and 2002, and on March 27, 2006 for tax year 2004, pursuant to Tax General Article, Section 13–508(c) of the Annotated Code of Maryland.

On July 10, 2006, an informal hearing was held regarding the above referenced assessments. At issue is the imposition of frivolous return penalties by the Comptroller for all years, and for tax year 2004, also the recomputation of tax due.

Rita Bormuth, of the Compliance Division, appeared on behalf of the Comptroller of Maryland. She testified that Mr. Bert filed amended returns for tax years 1999 and 2000 showing only interest and unemployment income. For tax years 2001 and 2002, Mr. Bert filed original returns reporting zero income. On March 31, 2006, Ms. Bormuth sent Mr. Bert a Notice of Income Tax Assessment which assessed a frivolous return penalty of $500.00 for each of the years 1999, 2000, 2001, and 2002. For tax year 2004, Mr. Bert filed a return reporting zero income and requesting a refund of his withholding in the amount of $7,076.13. Ms. Bormuth testified that she recomputed the return including the wages in the amount of $93,578.00 reported on the W2 from Data Computer Corp. of America. Based on that recomputation, she calculated a tax refund due in the amount of $39.43. She assessed a $500.00 frivolous return penalty, and applied the refund amount toward that penalty, resulting in a balance due on the 2004 assessment of $460.57.

The Comptroller outlined appellant's arguments:

Mr. Colvin Bert appeared on his own behalf at the hearing. Mr. Bert disputed the imposition of the frivolous

return penalties. As to the amended returns, he stated that he was required by law to amend his Maryland returns because he had amended his federal returns for tax years 1999 and 2000. However, he also stated that the federal amendments had no effect on his Maryland liability. With regard to the amounts reported on all of the returns, Mr. Bert stated that he felt his Maryland returns were filed in accordance with applicable Maryland law. As directed by Tax–General Article § 10–204, he reported the same federal adjusted gross income on his Maryland return that he reported on his federal returns. He further argued that by reporting these amounts, as well as the amounts he calculated on his substitute W2s, the information reported on the returns was not substantially incorrect on its face. With regard to tax year 2000, Mr. Bert also disputed the imposition of the frivolous return penalty with regard to the amended return, since he had already been assessed a frivolous return penalty when he filed his original 2000 Maryland return.

Mr. Bert also questioned Ms. Bormuth's authority to issue the assessments and the legality of those assessments. He referred to Ms. Bormuth's job description and argued that nowhere in that description did he find authority to issue assessments or penalties. Mr. Bert's position is that because Ms. Bormuth's job description does not specifically list assessing tax or penalty as one of the duties of her position, Ms. Bormuth acted outside the scope of her authority in issuing these assessments, thereby rendering the assessments illegal.

The Comptroller then overruled appellant's demand for copies of "original assessments":

Throughout the hearing, Mr. Bert demanded copies of "original assessments," referring to assessments issued with regard to tax deficiencies discovered in tax years 1999, 2000, 2001 and 2002. Liabilities have been finalized with regard to those years which are outside the scope of this matter,

which for tax years 1999, 2000, 2001, and 2002, is limited to the appeal of the frivolous return penalties imposed.

The Notice of Final Determination concludes:

Pursuant to Tax–General Article § 10–102, a tax is imposed on the Maryland taxable income of each individual. "Maryland taxable income" is defined at Tax–General Article § 10–101(1) for an individual as "Maryland adjusted gross income, less the exemptions and deductions allowed under this Title." Tax–General article § 10–203 provides that "the Maryland adjusted gross income of an individual is the individual's federal adjusted gross income for the taxable year as adjusted under this Part II of this subtitle."

"Gross income" is defined in Internal Revenue code (IRC) § 61(a) as "... all income from whatever source derived, including (but not limited to) [c]ompensation for services." IRC § 3401(a) defines the term "wages" as "... all remuneration (other than fees paid to a public official) for services performed by an employee for his employer ..." Moreover, the courts have consistently found that wages are included in gross income.

Mr. Bert was compensated, in the form of wages, for the services he performed for Data Computer Corp. of America, and those wages are income. The Taxpayer has not met his burden of proving that his wages are not subject to federal and state income tax. Accordingly, I find that the adjustments to Mr. Bert's 2004 return resulting in tax refund $39.43 were correct.

Mr. Bert's complaint challenging Ms Bormuth's authority to issue the assessments is without merit. The September 28, 2004 memorandum that Mr. Bert referred to as "Ms. Bormuth's job description" begins with the following summary of Ms. Bormuth's position: "The main purpose of this position is to audit questionable individual income tax returns to determine if the information on the return is correct and to adjust the returns when necessary based on the audit findings."

\* \* \*

A tax collector who in the course of examination or audit of a return finds a deficiency is required by § 13–401(a) to assess the deficiency. The language is unequivocal. Therefore, Ms. Bormuth, like any employee of the Comptroller who examines and audits returns, is required by the statute to assess a deficiency when she finds one. Being statutorily mandated, there is no question that issuing an assessment after finding a deficiency was within the scope of her employment. As an employee of the Comptroller acting within the scope of her employment, I find that the deficiency discovered by Ms. Bormuth with regard to tax year 2004 (the variance between the refund claimed by Mr. Bert and the much lower refund calculated by Ms. Bormuth) was lawfully assessed. Likewise, the language of § 13–705, "shall assess a penalty," is language of requirement. Based upon the findings of her investigation, Ms. Bormuth was compelled to assess the frivolous penalties at issue in this appeal for tax years 1999, 2000, 2001, 2002, and 2004. Accordingly, I reject Mr. Bert's claim that the assessments were issued unlawfully. Based on the evidence presented, I agree that the returns filed by Mr. Bert that are at issue in this appeal contain information that, on its face, indicated the tax reported is incorrect, and that this position for each year is frivolous because it has no basis in law or fact, is patently unlawful, and does not involve a legitimate dispute or reflect an inadvertent mathematical or clerical error. Mr. Bert acknowledged working for Computer Data Corp. of America and that he received wages for his work, despite his erroneous argument that the employer issued W2 is incorrect. As Mr. Bert has been made aware by the outcome of other appeals, those wages are taxable as income, and for him to take a contrary position is indeed frivolous.

Mr. Bert's assertion that he was required "under Maryland law" to file amended returns for tax years 1999 and 2000 because he filed amended federal returns for those years is also incorrect. In the case where the Internal Revenue Service issues a final determination increasing

federal taxable income, Tax–General Article § 13–409(b) requires the individual to file a statement of the amount of increase within 90 days of the date of the Service's determination. However, there is no legal requirement to file an amended return simply because an amended federal return was filed when the requested federal change would not result in an increase to federal taxable income.

Accordingly, the assessments are affirmed in the amounts stated above.

On August 23, 2007, appellant petitioned the Maryland Tax Court to review the Comptroller's "Final Determination."

### *Tax Court Action*

The Tax Court conducted a hearing on appellant's petition on March 13, 2008. The Tax Court denied appellant's petition and explained its ruling from the bench:

> Mr. Bert, I'm going to rule that you do in fact owe frivolous penalties for each and every one of your returns.
>
> Your arguments, if I can best summarize them, are that you had no taxable income in any one of those years because of your reading of the Tax Code that you fall within one or possibly more than one code section which would render every dollar that you earned as non-taxable.
>
> [T]he one that I find as frivolous as it could possibly be was the argument that there's a Code section that says income earned out of the United States is exempt, and that your income would be exempt because at least some of your income was earned outside the United States. And then you pointed to the fact that you earned some income in the State of Maryland, which is not part of the United States. Patently frivolous.
>
> ... I don't think that it's possible that there can be a sincere belief that earned income in the State of Maryland is exempt from State and Federal income tax because it was earned outside of the United States.
>
> You then pointed to another section that defined some people as employees. The Code section on its face does not

say these are the only employees. It does say, the term employee shall include. But it doesn't say those are the only employees, or the only possible employees, and it's a fairly restrictive list. I don't believe there's any decisions anyplace that say that those are the only individuals that have taxable income from wages.

And then you referred to some other sections with even less description as to how they might possibly apply to you. And then you came to the amazing decision that every single dollar of wage that you earned in every one of those years was exempt from Federal and Maryland income tax. This is frivolous.

Not one of these possible positions have any basis in fact, have any basis in law. . . . But, in fact, you were asking for a refund of every penny that had been withheld and suggested that you had no income whatsoever, no taxable income whatsoever. This is frivolous. This on its face is impeding the process of the tax collection. Individuals, the Comptroller's Office, are wasting their time trying to come to an understanding of what your taxable income should be because you are providing incorrect information.

The Tax Court then addressed the substitute W–2 Forms that depicted his income as "0" and the "zero" returns:

. . . the W–2 that you created has the same zero and the same zero on the Maryland return, so since they're all three zeros they must be correct—no, they just all three zeros are the same—and provided no information, none at all, as to why any one of those zeros would be correct other than the fact that the State of Maryland is not part of the United States so your earnings in this State should not count.

\* \* \*

You stated before that no court has ever ruled against you, I don't think that's the case. I know the Tax Court has ruled against you any number of times. Zeros for income for you are not appropriate, and it is not right.

The Tax Court then addressed and rejected appellant's argument with respect to the assessment of penalties [11]:

[JUDGE SILBERG:] Just by accident, is there any issue that I haven't addressed in my decision? Okay.

MR. LANGBAUM: I don't think so, Your Honor.

MR. BERT: You haven't addressed the 13–705(b) statute that says if there's no tax due then—13–705(b) claims that the penalty is an additional penalty of 13–701. And so therefore . . .

JUDGE SILBERG: Okay. Under the 13–705 return it says, does not contain information on which substantial correctness of the tax can be determined. If you're suggesting to me that putting a zero down is substantially allowing anyone to determine the correctness of the tax, I just don't follow it. It's clearly, at best, just confusing the whole issue.

MR. BERT: No, I'm referring to 13–705(b).

JUDGE SILBERG: That's exactly what I'm reading.

MR. BERT: No, (b).

JUDGE SILBERG: Additional to other penalty.

MR. BERT: Right.

JUDGE SILBERG: The penalty under subsection (a) is in addition to any other penalty assessed under this Code section. That's certainly true. I don't know if anybody on any of these returns has assessed any additional penalties, but this would be in addition to those. I don't think this section would require there be a penalty otherwise. But this is in addition to, not a substitute for.

On April 25, 2008, the Tax Court issued an Order affirming the Comptroller's decision. The Order incorporated the reasons set forth by the opinion the Tax Court rendered from the bench at the conclusion of the hearing.

---

**11.** *See* Md.Code (1988, 2004), § 13–705(b) of the Tax General Article ("TG").

### Judicial Review

On May 23, 2008, appellant petitioned for judicial review in the Circuit Court for Howard County. On December 8, 2009, the court conducted a hearing on appellant's petition and ruled in favor of the Comptroller:

[THE COURT:] Essentially, the four issues that are before the Court today are whether the Tax Court properly concluded the Petitioner was not entitled to exclude from income the wages he received from his employer in 2004.

I find the record does contain substantial evidence to support the Tax Court's decision.

Number Two, the question is whether the Maryland Tax Court properly affirmed the assessment of frivolous return penalties against the Petitioner for '99 through 2002 and for 2004, because Petitioner excluded wages from reported income when he filed his Maryland income tax.

Again, I do find that the record is replete with substantial evidence to support the Tax Court's conclusions.

The third issue is whether the Tax Court properly allocated the burden of proof to the Petitioner in his claims for abatement of frivolous return penalty.

I do find that the Tax Court properly allocated the burden of proof to the Petitioner.

And the fourth question is sort of a catch-all: did the Maryland Tax Court commit any other clear errors, and I find that they did not.

The circuit court issued an order reflecting this holding on December 11, 2008. This appeal followed.

### DISCUSSION

### Standards of Review

█ The Maryland Tax Court is an administrative agency and its decisions are subject to the same standards of judicial review that are reserved for any appellate tribunals. *See Frey v. Comptroller*, 184 Md.App. 315, 330, 965 A.2d 923 (2009), *aff'd on other grounds*, 422 Md. 111, 29 A.3d 475 (2011),

*cert. denied,* —— U.S. ——, 132 S.Ct. 1796, 182 L.Ed.2d 618 (2012). *See also Furnitureland South Inc. v. Comptroller,* 364 Md. 126, 138 n. 8, 771 A.2d 1061 (2001); *Shell Oil Co. v. Supervisor of Assessments,* 276 Md. 36, 38, 343 A.2d 521 (1975); Arnold Rochvarg, PRINCIPLES AND PRACTICE OF MARYLAND ADMINISTRATIVE LAW, § 13.4 at 159–60 (2011) (discussing original jurisdiction of circuit court; noting that Tax Court remains administrative agency).

 Accordingly, we "undertake our own *de novo* review of the decision of the Tax Court." *Frey,* 184 Md.App. at 330, 965 A.2d 923 (citations omitted). Hence, "[w]hen this or any appellate court reviews the final decision of an administrative agency such as the [Tax Court], the court looks through the circuit court's ... decision[ ], although applying the same standards of review, and evaluates the decision of the agency." *People's Counsel v. Surina,* 400 Md. 662, 681, 929 A.2d 899 (2007) (citation omitted). *See Comptroller of the Treasury v. Science Applications International Corp.,* 405 Md. 185, 192–93, 950 A.2d 766 (2008). Again, the appropriate inquiry is not whether the circuit court erred, but "whether the administrative agency erred." *Spencer v. Bd. of Pharmacy,* 380 Md. 515, 524, 846 A.2d 341 (2004).

 " 'Maryland courts play a limited role when reviewing adjudicatory decisions of administrative agencies[,]' " *MVA v. Dove,* 413 Md. 70, 79, 991 A.2d 65 (2010) (quoting *MVA v. Shepard,* 399 Md. 241, 251, 923 A.2d 100 (2007)), and a court's role in conducting this review is "very narrow." *Shepard,* 399 Md. at 252, 923 A.2d 100 (citing *Maryland Aviation Administration v. Noland,* 386 Md. 556, 570–71, 873 A.2d 1145 (2005)). Our review of an agency's determinations of law is plenary, although an agency's interpretation of its organic statute is entitled to some deference and its expertise entitled to respect.[12] *Total AV v. Dep't of Labor,* 360 Md. 387, 394, 758

---

**12.** This Court has noted with respect to the respective functions of the Comptroller and the Tax Court:

A.2d 124 (2000). *See Spencer*, 380 Md. at 529 n. 3, 846 A.2d 341. *See also Frey v. Comptroller*, 184 Md.App. 315, 331, 965 A.2d 923 (2009), *cert. denied,* —— U.S. ——, 132 S.Ct. 1796, 182 L.Ed.2d 618 (2012).

 Findings of fact by the administrative agency are reviewed under a more deferential "substantial evidence" standard. *See Stansbury v. Jones*, 372 Md. 172, 182–83, 812 A.2d 312 (2002); *Comptroller v. Colonial Farm Credit, ACA,* 173 Md.App. 173, 177, 918 A.2d 514 (2007). *See also Comptroller v. Science Applications Int'l Corp.,* 405 Md. 185, 192, 950 A.2d 766 (2008). *See generally,* A. Rochvarg, MARYLAND ADMINIS-TRATIVE LAW § 4.33 at 137–39 (2007). Writing for the Court of Appeals, Judge Raker articulated the contours of substantial evidence review:

When an agency decision encompasses a mixed question of law and fact, we review it under the "substantial evidence" standard provided in Md.Code (1984, 2004 Repl.Vol.), §§ 10–222(h)(3)(v) of the State Government Article.... Substantial evidence review is narrow; the question is not whether we would have reached the same conclusions, but merely whether "a reasoning mind" could have reached those conclusions on the record before the agency.... We appraise an agency's fact finding in the light most favorable to the agency, and this deference extends to subsequent inferences drawn from that fact finding, so long as supported by the record.... The agency's determination of factual issues will be upheld if the record of the agency

To be sure, and as noted, the Comptroller is a "tax determining agency," that is, a "governmental unit of the State that is authorized to make the final decision or issue the final order about a tax issue within the jurisdiction of the Tax Court, before the decision may be appealed to the Tax Court[,]" T–G § 13–501(c); and the Tax Court, in deciding the case at bar, was bound to presume that the Comptroller's decision was correct. Nevertheless, on substantial evidence review of the Tax Court's decision on a mixed question of law and fact, we give deference to the Tax Court's application of TG section 4–103(b)(4)(i), not the Comptroller's, as the Tax Court is the agency charged with interpreting and applying the Maryland tax code. *Comptroller of Treasury v. Johns Hopkins University,* 186 Md.App. 169, 188–89, 973 A.2d 256 (2009).

proceeding affords a substantial basis of fact from which the issue can be reasonably inferred.

*Schwartz v. Dep't of Natural Res.*, 385 Md. 534, 554, 870 A.2d 168 (2005) (citations omitted). We review the evidence in the light most favorable to the Tax Court. *Comptroller v. Citicorp*, 389 Md. 156, 163, 884 A.2d 112 (2005). An administrative agency "may be affirmed only on the basis of the grounds on which it decided the case." *Frey v. Comptroller*, 422 Md. at 133 n. 12, 29 A.3d 475; *Evans v. Burruss*, 401 Md. 586, 593, 933 A.2d 872 (2007).

### Introduction

Appellant received total compensation in the tax years in question of approximately $434,424, including unemployment compensation of at least $2,000. In his view, the compensation from his employers for this period is not subject to taxation. As noted above, appellant presents a variety of questions in his challenge to the decision by the Tax Court. *See* n. 2, *ante*. We have carefully reviewed his arguments and shall address his salient points below. At this juncture, however, we consider the core issue presented, *i.e.*, we determine whether the Tax Court erred in ruling that appellant was not entitled to exclude from taxable wages the compensation he received from employers in 2004 and whether the frivolous return penalties assessed against him for the 1999 up to and including 2002 and 2004 were unlawful.

### Comptroller's Calculation of 2004 Income and "Adjustment of Return"

 As best can be determined, appellant complains that the Comptroller unlawfully adjusted his returns. Essentially, he asserts that the federal adjusted gross income is conclusive and binds the Comptroller, and that the Comptroller employee who made the adjustment and issued the assessment acted beyond her authority.[13] We disagree.

---

13. This line of argument, we believe, is embraced within appellant's claims that a Comptroller employee lacked the authority to "adjust" his

In *Comptroller v. Colonial Farm Credit, ACA, ante,* the Comptroller appealed the allowances by the circuit court of the refund claims of an Agricultural Credit Association (ACA) taxpayer that were based on amended tax returns. At issue was whether the Comptroller was bound by a settlement between the taxpayer and the Internal Revenue Service. We concluded that the Comptroller was not.

Writing for this Court, Judge Kenney pointed out that, while "Maryland tax law looks only to the total federal taxable income generated on the federal tax return," he further observed that "other aspects of federal law that might ultimately affect the taxpayer's federal tax liability" such as certain federal deductions do not enter into the Maryland tax calculus. *Comptroller v. Colonial Farm Credit, ACA,* 173 Md.App. at 182, 918 A.2d 514. We then emphasized:

[T]he Comptroller is not required to accept the federal taxable income figure provided on a taxpayer's federal tax return merely because that figure was accepted by the IRS. To the contrary, the doctrine of conformity presupposes a truthful and accurate federal taxable income figure: "Obviously the Maryland law contemplates the truthful reporting of income on the federal return; otherwise a defrauding taxpayer, while subject to federal prosecution, would escape state prosecution, a result hardly contemplated by the legislature." *Winters v. State,* 301 Md. 214, 236, 482 A.2d 886 (1984).

The Comptroller therefore has the authority to adjust a taxpayer's taxable income to ensure that it is truthful and accurate under the IRC:

If a taxpayer failed to report certain income on its federal tax return that the I.R.C. mandated it to report, and the IRS accepted that figure, [the Comptroller] should be permitted to recalculate the Maryland modified income because the federal taxable income figure it relies on would be incorrect. Likewise, if the IRS exercised its

---

returns and assess penalties, and that the Maryland Tax Court erred by affirming the Comptroller's assessments.

discretion to create mandatory regulations that required the taxpayer to report certain income, and the taxpayer failed to do so, [the Comptroller] could follow those IRS regulations in recalculating the Maryland modified income. In both cases, the statute or regulation are rigid and objective in their determination of what is taxable income. If we were to hold that [the Comptroller] could never apply such provisions, then taxpayers who evade their federal income taxes would be free, without considering criminal sanctions, to evade their Maryland income tax obligation as well. We should not attribute such an illogical intent to the Legislature's 1967 revision of the state tax code.

*Comptroller v. Colonial Farm Credit,* 173 Md.App. at 183–84, 918 A.2d 514 (quoting *Comptroller v. Gannett Co.,* 356 Md. 699, 716, 741 A.2d 1130 (1999) (footnote omitted)). *Cf. Katzenberg v. Comptroller,* 263 Md. 189, 205–06, 282 A.2d 465 (1971) (State's power to tax basic attribute of sovereignty).

Although appellant submitted a "zero return" to the Internal Revenue Service, and attempts to justify a similar, amended, Maryland return on the basis of the federal filing, the Comptroller was entitled, indeed obligated, to "recalculate the Maryland modified income because the federal taxable income figure it relies on would be incorrect." *Colonial Farm Credit,* 173 Md.App. at 184, 918 A.2d 514. Appellant's claim that his Maryland return is necessarily compelled by a federal filing is without merit. The federal adjusted gross income is not binding on the Comptroller if that figure is demonstrably incorrect. The Comptroller's audit power is not constrained by an incorrect or fraudulent federal adjusted gross income.

### Authority of Comptroller Employee

 Appellant insists that the employee of the Comptroller who assessed his frivolous return penalties lacked the authority to do so. He asserts:

[Ms.] Gorman's conclusion [in the Notice of Final Determination] concerning [Ms.] Bormuth's authority to issue an assessment is erroneous because nowhere in [Ms.] Bor-

muth's job description does it state that an auditor making an adjustment to a tax return is a Tax Collector that can assess a tax or penalty. As a matter of fact her job description specifically states that she will attend appeal hearings regarding adjustments made as a result of an audit or a tax protestor case. [Ms.] Bormuth did not submit any evidence to support Gorman's contention that an audit was conducted of [Mr.] Bert's 2003 tax return and [Mr.] Bert is unaware of being identified as a tax protestor by [Ms.] Bormuth. Therefore, [Ms.] Bormuth may testify at a hearing as to why an adjustment is warranted, but nowhere does her job description state she has assessment authority. It appears [Ms.] Gorman accomplishes the assessment authority in [Mr.] Bert's case.

This argument is without merit. We agree with the analysis, as set forth by Ms. Gorman in the "Notice of Final Assessment," that Ms. Bormuth possesses the authority to assess a frivolous return penalty. The statutory definition of "Comptroller" embraces an employee acting within the scope of employment and also an "agent or representative of the Comptroller acting within the scope of the Comptroller's authority." [14] TG §§ 1–101(e)(2)(i), (ii). The fact that Ms. Bormuth is authorized to "attend appeal hearings" does not, as apparently suggested by appellant, undermine her authority to assess penalties. TG § 13–101(c)(2)(ii) defines "tax collector" to include the "Comptroller," and we conclude that the term "Comptroller" embraces any employee.

TG § 13–401(a) provides that, "if a tax collector examines or audits a return and determines that the tax due exceeds the amount shown on the return, the tax collector shall assess the

---

14. The "revisor's note" to the legislation that enacted the Tax–General Article explains the definition of "Comptroller":

This subsection is new language added to avoid repetition of phrases such as "the Comptroller of the Treasury" and "the Comptroller of the Treasury of Maryland" and to clarify that, unless otherwise specified, the term "Comptroller" includes employees, agents, and representatives of the Comptroller.

Revisor's Note, 1988 Md. Laws Chap. 2, § 1–101(e).

deficiency." TG § 13–705(a) authorizes the Comptroller to assess a frivolous return penalty. In each instance, we conclude that the Tax–General Article authorizes the Comptroller, and employees to whom the tax collection authority is delegated, to render necessary assessments. We note in passing that, while the Tax–General Article does not define the term "assessment," the Supreme Court has recognized in a case that addressed the Tax Injunction Act, 28 U.S.C. § 1341, that "[i]n . . . tax law generally, an assessment is closely tied to the collection of a tax, *i.e.*, the assessment is the official recording of liability that triggers levy and collection efforts." *Hibbs v. Winn*, 542 U.S. 88, 101, 124 S.Ct. 2276, 159 L.Ed.2d 172 (2004). According to a job description, the "purpose" of Ms. Bormuth's position as a Revenue Specialist "is to audit individual income tax returns to determine if the information on the return is correct and to adjust the returns when necessary based on the audit findings." Rendering an assessment, in our view, falls within the scope of Ms. Bormuth's work. Appellant's assertion to the contrary is baseless.[15]

### *Ruling on 2004 Wages*

We now turn to the merits of appellant's challenge to the 2004 Tax Year assessment. The Tax Court rejected appellant's various theories as to why he should be allowed to avoid his tax obligations and upheld the Comptroller's recalculation of appellant's income for 2004. We discern no error in this ruling.

---

**15.** Appellant's "argument" could also be rejected out of hand because it is inadequately briefed. " '[A]rguments not presented in a brief or not presented with particularity will not be considered on appeal.' " *Diallo v. State*, 413 Md. 678, 693, 994 A.2d 820 (2010) (quoting *Klauenberg v. State*, 355 Md. 528, 552, 735 A.2d 1061 (1999)). *See also Rohrbeck v. Rohrbeck*, 318 Md. 28, 38 n. 4, 566 A.2d 767 (1989) (Court does not address issues not adequately briefed or argued); *Beck v. Mangels*, 100 Md.App. 144, 149, 640 A.2d 236 (1994) (same), *cert. dismissed as improvidently granted*, 337 Md. 580, 655 A.2d 370 (1995). Further, appellant's recognition that "[i]t appears [Ms.] Gorman accomplishes the assessment authority in [Mr.] Bert's case," does not put forth a cogent reason why we should overturn the decision of the Tax Court.

The General Assembly has dictated that, except in cases not relevant here, "a tax is imposed on the Maryland taxable income of each individual[.]" Md.Code (1988, 2010 Repl.Vol.), § 10–102 of the Tax General Article ("TG"). Maryland residents are taxed under TG § 10–105, which establishes the State income tax rates, and are also subject to local income tax pursuant to TG §§ 10–103, 10–106. *See Frey,* 422 Md. at 123–24, 29 A.3d 475. The point of departure for calculating a resident's Maryland tax liability is the taxpayer's federal adjusted gross income. TG § 10–203.[16] *Cf. Comptroller v. Colonial Farm Credit, ACA,* 173 Md.App. at 181, 918 A.2d 514 (recognizing that "Maryland income tax liability is dependent, to some extent, on the taxpayer's federal income tax liability.") We further observed in *Colonial Farm Credit:*

The Court of Appeals has explained the doctrine of conformity between state and federal tax law as follows:

> [T]he whole thrust of the Maryland Act is to impose a tax on the amount determined under the Internal Revenue Code as the adjusted gross income of an individual or the taxable income of a corporation. This is a formula or yardstick objectively derived which initially takes no account of the source, nature or composition of the funds; it is simply a figure developed by the federal return.

*Comptroller v. Colonial Farm Credit,* 173 Md.App. at 181, 918 A.2d 514 (quoting *Katzenberg v. Comptroller,* 263 Md. at 204–205, 282 A.2d 465). "Maryland income tax law has consistently remained 'inextricably keyed' to the Internal Revenue Code." *Comptroller v. Chesapeake Corp. of Virginia,* 54 Md. App. 208, 213, 218, 458 A.2d 459, *cert. denied,* 296 Md. 653 (1983).

---

16. TG § 10–203 provides that, "[e]xcept as provided in Subtitle 4 of this title, the Maryland adjusted gross income of an individual is the individual's federal adjusted gross income for the taxable year as adjusted under this Part II of this subtitle." *See Evans v. Comptroller,* 273 Md. 172, 175, 328 A.2d 272 (1974) (citing *Katzenberg v. Comptroller,* 263 Md. 189, 204–05, 282 A.2d 465 (1971)).

The federal adjusted gross income is, in turn, defined by the Internal Revenue Code (IRC) as the individual's gross income minus certain deductions. 26 U.S.C. § 62(a). The IRC defines "gross income" as follows:

**§ 61. Gross income defined.**

(a) **General definition.**—Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

(1) Compensation for services, including fees, commissions, fringe benefits, and similar items;

(2) Gross income derived from business . . .

26 U.S.C. § 61(a).

■ Appellant does not dispute the definition of "gross income" as that term is defined in the Internal Revenue Code. He instead asserts that he does not qualify as an "employee" subject to taxation:

Bert is an employee of a domestic corporation and is not an officer of a corporation. Therefore, Bert is not an employee as defined in the IRC § 3401(a) and Bert's wages should not have been subject to withholding as taxable wages.

We disagree. First, "wages" are income for purposes of the Internal Revenue Code. Section 3401(a) of the IRC, 26 U.S.C. § 3401(a) defines "wages" in part as follows:

**§ 3401. Definitions**

**(a) Wages**

For purposes of this chapter, the term "wages" means all remuneration (other than fees paid to a public official) for services performed by an employee for his employer, including the cash value of all remuneration (including benefits) paid in any medium other than cash; . . .

"Every court which has ever considered the issue has unequivocally rejected the argument that wages are not income." *United States v. Connor*, 898 F.2d 942, 943 (3d Cir.1990).

Appellant seizes on the definition of "employee" as set forth in IRC § 3401(c) to emphasize that he does not qualify as an "employee" and, presumably, did not earn taxable "wages." IRC § 3401(c) reads in pertinent part:

**(c) Employee**

For purposes of this chapter, the term "employee" includes an officer, employee, or elected official of the United States, a State, or any political subdivision thereof, or the District of Columbia, or any agency or instrumentality of any one or more of the foregoing. The term "employee" also includes an officer of a corporation.

26 U.S.C. § 3401(a), (c).

Appellant's claim that he is not an "employee" is baseless. This position has specifically been disapproved by the Internal Revenue Service:

Section 3401(a) provides that "wages" include all remuneration for services performed by an employee for his employer. Section 3121(a) provides a similar definition of wages for FICA tax purposes. The argument that only federal employees and persons residing in Washington, D.C. or federal territories and enclaves are subject to tax is based on a misinterpretation of section 3401(c), which defines "employee" and states that the term "includes an officer, employee or elected official of the United States, a State, or any political subdivision thereof. . . ." Section 31.3401(c)–1 of the Employment Tax Regulations provides that the term "employee" includes every individual performing services if the relationship between that individual and the person for whom he performs such services is the legal relationship of employer and employee. Section 7701(c) states that the use of the word "includes" "shall not be deemed to exclude other things otherwise within the meaning of the term defined." Thus, the word "includes" as used in the definition of "employee" under § 3401(c) is a term of enlargement, not of limitation. Courts have recognized that federal employees and officials are among those within the definition of "employee," which also includes private citi-

zens. *See Sullivan v. United States,* 788 F.2d 813, 815 (1st Cir.1986) (contention that taxpayer was not an "employee" is meritless, section 3401(c) does not limit withholding to the persons listed therein); *United States v. Latham,* 754 F.2d 747, 750 (7th Cir.1985) (under section 3401(c), the category of "employee" includes privately employed wage earners; the word "includes" is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others); *Pabon v. Commissioner,* T.C. Memo 1994–476 (1994) (taxpayer's frivolous position that she was not subject to tax because she was not an employee of the federal or state governments warranted sanctions of $2,500).

The employment tax withholding provisions do not affect whether wages are gross income. Section 61 provides that compensation for services is includable in gross income. Whether the compensation for services is in the form of wages, or in some other form, is irrelevant. The amount is still subject to income tax. All employees, not just federal employees and those living in federal territories and enclaves, are subject to income and employment taxes.

Internal Revenue Service, Rev. Rul.2006–18 (April 10, 2006). Various federal and state courts are in accord. In *United States v. Latham,* 754 F.2d 747 (7th Cir.1985), the defendant was convicted of willful failure to file income tax returns and for filing false W–4 statements. One of the six issues raised on Latham's direct appeal from the judgments of conviction and sentence was that the district court erred by refusing to propound various jury instructions. The United States Court of Appeals for the Seventh Circuit rejected Latham's claim of error with respect to two theories that are similar to appellant's interpretation of the Internal Revenue Code; the court's comment is instructive:

The other jury instructions proffered by the defendant are equally inane. Thus we hold that the district court did not err in refusing the other instruction offered by Latham implying that 26 U.S.C. § 7343 defining "person" does not include natural persons. Similarly, Latham's instruction

which indicated that under 26 U.S.C. § 3401(c) the category of "employee" does not include privately employed wage earners is a preposterous reading of the statute. It is obvious that within the context of both statutes the word "includes" is a term of enlargement not of limitation, and the reference to certain entities or categories is not intended to exclude all others.

*United States v. Latham,* 754 F.2d at 750. In a footnote, the Seventh Circuit court quoted with approval the following observation by the Fifth Circuit:

"The statute's provision was not intended to exclude individual[s] or to limit the ordinary meaning of the term 'person' so as to exclude individuals or 'natural persons' . . . from their responsibility to comply with the tax laws."

*Id.,* 754 F.2d at 750 n. 2 (quoting *United States v. Rice,* 659 F.2d 524, 528 (5th Cir.1981)). *See United States v. Beale,* 574 F.3d 512, 518 n. 3 (8th Cir.2009); *Chamberlain v. Krysztof,* 617 F.Supp. 491, 496 (N.D.N.Y.1985) ("definition of 'employee', contrary to the interpretation urged by plaintiff, is more properly read to *include* all those persons with the 'status of employee under the usual common law rules applicable in determining the employer-employee relationship.' ") (emphasis added) (quoting *Marvel v. United States,* 719 F.2d 1507, 1514 (10th Cir.1983) (distinguishing "employee" from "independent contractor")); *Peth v. Breitzmann,* 611 F.Supp. 50, 53 (E.D.Wis.1985). *See also Biermann v. C.I.R.,* 769 F.2d 707, 708 (11th Cir.1985) (rejecting claim that taxpayer not an "employee" subject to withholding within the meaning of IRC). We note the following observation by the First Circuit:

To the extent Sullivan argues that he received no "wages" in 1983 because he was not an "employee" within the meaning of 26 U.S.C. § 3401(c), that contention is meritless. Section 3401(c), which relates to income tax withholding, indicates that the definition of "employee" *includes* government officers and employees, elected officials, and corporate officers. The statute does not purport to limit withholding to the persons listed therein.

*Sullivan v. United States*, 788 F.2d 813, 815 (1st Cir.1986) (emphasis in original). *Cf. United States v. Hendrickson*, 664 F.Supp.2d 793, 815–16 (E.D.Mich.2009) (rejecting claim that taxpayer was not a "person" under IRC § 7343).[17] We hold that appellant was an "employee," as that term is defined in IRC § 3401(c).

### *Source of Income—Taxpayer Status*

 Before the Tax Court, appellant urged that there is no federal statute that dictates that income derived from sources within the United States was taxable and, thus, income derived from his employment in the State of Maryland was not taxable. Appellant also advanced the argument that he earned compensation "outside the country." His argument is without merit.

At the hearing before the Tax Court, appellant's testimony prompted the following exchange:

JUDGE SILBERG: How much did you—In 1999 how much did you earn outside of the country?

MR. BERT: All of it.

\* \* \*

[COMPTROLLER:] Okay. Explain to the Court then what is the basis of your understanding that would have you conclude that your wages were earned outside of the country?

A. That the United States only includes certain instrumentalities, government places . . . .

JUDGE SILBERG: Oh! Let me ask a different question. Where exactly did you earn this money in 1999?

\* \* \*

JUDGE SILBERG: Was it in the State of Maryland?

MR. BERT: My company was in the State of Maryland, yes.

---

**17.** The fact that these cases are criminal prosecutions does not diminish their precedential authority.

JUDGE SILBERG: Were you in the State of Maryland?

MR. BERT: Yes. Would do you mean, as far as—Sometimes I was in the State of Maryland, yes.

Your Honor, this line—I object to all of this line of questioning.

The Tax Court sought to keep the hearing on point and reminded appellant that the court required a factual basis in order to rule on appellant's legal theories:

JUDGE SILBERG: Mr. Bert, we're asking you factual questions. It's up to the Court to interpret the Code and you can give us guidance in interpretation, but first we start with facts. Now are you going to answer our questions or not?

MR. BERT: I'm going to have to, to the best of my ability.

JUDGE SILBERG: Okay. We'll try it one last time: In 1999 where were you working that you think was outside of the United States?

MR. BERT: And I'm saying I can't answer that question.

[COMPTROLLER:] Can't or won't?

MR. BERT: No. I can't. All I can say is, according to the Code, I was not working in the United States.

JUDGE SILBERG: All right. Maybe I'll try a different question. Were you working in one of the fifty states?

MR. BERT: No.

JUDGE SILBERG: Were you working in the . . .

MR. BERT: What did you say, was I working in one of the fifty states?

JUDGE SILBERG: Fifty states.

MR. BERT: Sometimes, yes.

JUDGE SILBERG: Sometimes.

MR. BERT: Yes.

JUDGE SILBERG: So some of your earnings were in one of the fifty states of the United States.

MR. BERT: Yes, yes.

JUDGE SILBERG: And you didn't include any of those as part of your tax . . .

MR. BERT: No, because I was exempt. What I had, according to other Code sections, it was exempt.

* * *

A. I said it's the instrumentalities, it's the possessions of the United—it's the possessions. There are a number of things that—that, um . . .

JUDGE SILBERG: Okay. We'll try it: Is the State of Maryland part of the United States?

MR. BERT: On this, no.

[COMPTROLLER:] Okay. Now we're getting somewhere. Now we're getting somewhere, Mr. Bert.

Appellant's claim fails. Treasury Regulation 1.1–1(b) provides in part:

> **(b) Citizens or residents of the United States liable to tax.** In general, all citizens of the United States, wherever resident, and all resident alien individuals are liable to the income taxes imposed by the Code whether the income is received from sources within or without the United States.

26 C.F.R. § 1.1–1(b). Similarly, the United States Court of Claims has emphasized that the

> determination of where income is derived or "sourced" is generally of no moment to either United States citizens or United States corporations, for such persons are subject to tax under I.R.C. § 1 and I.R.C. § 11, respectively, on their worldwide income.

*Great–W. Life Assurance Co. v. United States,* 678 F.2d 180, 183 (Ct.Cl.1982).

One of appellant's main contentions was that, for purposes of the Internal Revenue Code, Maryland was not part of the United States. This claim is without merit. In *United States v. Sloan,* 939 F.2d 499, 500–01 (7th Cir.1991) (citations and internal quotations omitted), the Seventh Circuit rejected the theory that an individual, for purposes of the IRC, was not subject to federal tax:

Also basic to Mr. Sloan's "freedom from income tax theory" is his contention that he is not a citizen of the United States, but rather, that he is a freeborn, natural individual, a citizen of the State of Indiana, and a "master"—not "servant"—of his government. As a result, he claims that he is not subject to the jurisdiction of the laws of the United States. This strange argument has been previously rejected as well. "All individuals, natural or unnatural, must pay federal income tax on their wages," regardless of whether they requested, obtained or exercised any privilege from the federal government.... An individual is a "person" under the Internal Revenue Code. Moreover, the tax code imposes a direct nonapportioned [income] tax upon United States citizens throughout the nation, not just in federal enclaves, such as postal offices and Indian reservations.

As one commentator observed:

The Internal Revenue Code imposes an income tax on the income of every individual who is a citizen or resident of the United States. Many protesters contend that they are not citizens of the United States but rather are one of the following: (1) freeborn, natural individuals; (2) citizens of State X; or (3) nonresident aliens. As a result, protesters claim they are not subject to the jurisdiction of the United States' tax laws. This claim is based upon an interpretation of the 1913 Internal Revenue Act which defined the words "state" and "United States" to "include" United States territories and the District of Columbia. Protesters argue the word "include" is a term of limitation rather than of definition, and thus conclude that the term "individual" within the Internal Revenue Code only applies to persons within such jurisdictions.

The protesters' argument is meritless. "While the Fourteenth Amendment does not create a national citizenship, it has the effect of making that citizenship 'paramount and dominant' instead of 'derivative and dependent' upon state citizenship." Thus, all natural born individuals are United States citizens, irrespective of where they reside in the

United States. Accordingly, all citizens are subject to the Internal Revenue Code and therefore, to the federal income tax.

Christopher S. Jackson, *The Inane Gospel of Tax Protest: Resist Rendering Unto Caesar–Whatever His Demands*, 32 GONZ. L.REV. 291, 310–11 (1997) (footnotes omitted). *Cf. United States v. Beale*, 574 F.3d 512, 515 (8th Cir.2009) (rejecting defendant's theories, which, "[a]t their core" are that "citizens of the 50 states and Native Americans are immune from federal income taxation unless they are employees of the federal government or freed slaves."). *See also United States v. Gerads*, 999 F.2d 1255, 1256 (8th Cir.1993) (rejecting contention that taxpayers not citizens of the United States, but rather "Free Citizens of the Republic of Minnesota" not subject to taxation) (citing *United States v. Kruger*, 923 F.2d 587, 587–88 (8th Cir.1991) (rejecting similar argument as "absurd")).

We also note the "U.S. Sources" theory, pursuant to which "domestically earned wages of United States citizens are not taxable because such wages are not specifically mentioned in the list of items of gross income that 'shall be treated as income from sources within the United States.' *See* 26 U.S.C. § 861(a)." *United States v. Bell*, 414 F.3d 474, 476 (3d Cir.2005) (quoting *United States v. Bell*, 238 F.Supp.2d 696, 699 (M.D.Pa.2003)). *See also United States v. Cohen*, 222 F.R.D. 652, 654 (W.D.Wash.2004) (The "U.S. Sources" argument "asserts that U.S. citizens and residents are not subject to tax on wages and other income earned or derived in the United States, and that only income from foreign sources is taxable."); *Bucker v. Indiana Dep't of State Revenue*, 804 N.E.2d 314, 315 (Ind.Tax 2004).

The Third Circuit, in *Bell*, further quoted with approval from the district court's opinion:

The Internal Revenue Code defines "gross income" as "all income from whatever source derived." 26 U.S.C. § 61(a).... Bell concedes that section 861 itself does not exempt domestically earned wages of U.S. citizens. No

doubt Bell makes this concession because section 861 plainly provides that "[c]ompensation for labor or personal services performed in the United States ..." shall be treated as income from sources within the United States. 26 U.S.C. § 861(a)(3). Nevertheless, he argues that such wages are not taxable because certain regulations promulgated under section 861 (*i.e.* 26 C.F.R. §§ 1.861–8(a)(4), 1.861–8(f)(1), and 1.861–8T(d)(2)(ii)(A)) create an applicable exemption. Bell's clients typically file zero income tax returns with an "asseveration of claimed income" attached, disputing the gross income indicated on the taxpayer's W–2 forms.

*United States v. Bell,* 414 F.3d 474, 476 (3d Cir.2005) (quoting *United States v. Bell,* 238 F.Supp.2d 696, 699 (M.D.Pa.2003)).

According to a recent opinion by another federal district court:

Section 861 of the IRC is part of Subchapter N, which makes explicit that "[c]ompensation for labor or personal services performed in the United States" is income from within the United States, and thus not foreign income which may be exempt or excepted from computation of a taxpayer's income for federal income tax purposes. 26 U.S.C. § 861(a)(3). As the Honorable Norman H. Wolfe, United States Special Trial Judge for the United States Tax Court, noted: "The rules of sections 861–865 have significance in determining whether income is considered from sources within or without the United States. The source rules do not exclude from U.S. taxation income earned by U.S. citizens from sources within the United States." *Corcoran v. C.I.R.,* 83 T.C.M. (CCH) 1107, at *2 (T.C.2002).... The Treasury Regulations promulgated pursuant to 26 U.S.C. § 861 also clarify that gross income from services performed within the United States includes compensation for labor and personal services performed within the United States.

*United States v. Hopkins,* 927 F.Supp.2d 1120, 1163 (D.N.M. 2013) (citation omitted). *See also, e.g., Solomon v. Comm'r,* T.C. Memo 1993–509 (1993) (taxpayer unsuccessfully tried to convince Tax Court that State of Illinois not part of United States).

The Tax Court properly rejected appellant's claim that he was not subject to taxation based on his theory that, for income tax purposes, the State of Maryland is not a part of the United States.

### Frivolous Return Penalty

 Contending that there was no basis to penalize him for filing a frivolous return, appellant urged the Tax Court to accept that he correctly completed his Maryland tax return:

The second requirement it says, or contains information that, on its face, indicates the tax reported on the return is substantially incorrect. Again, Mr. Langbaum says because—or the Comptroller says because it's zero, on its face, is saying that it's incorrect. But that number matches my Federal return, it matches my W-2, okay?

Then it goes on and says, And the conduct of the individual is due to a desire, apparent on the face of the return, to delay or impede the administration of the provisions of Title 10. I filed my return according to the law. I'm not trying to delay or impede. I just filed my returns according to the law. That's all I did.

They say, it has no basis in law or fact. I provided the law and I provided facts.

\* \* \*

So none of the requirements for a frivolous return penalty exists in my return.

\* \* \*

[APPELLANT]: Okay, Your Honor. I understand. So all in all, Your Honor, I filed my returns according to the law verbatim, you know, what I did on my Federal return, how I determined the W-2 return, and then from that I put that information on my Maryland Tax Return. That's what I did for all these years.

Contesting the Tax Court's ruling with respect to the frivolous return penalty, appellant insists that both the Comptroller and Tax Court misapplied the return penalty. He challenges their interpretation of TG § 13–705, which provision, he

argues, "is concerned with the status of the income tax return filed by appellant and does not state that an 'alleged exclusion' of wages paid by employer is grounds for a frivolous return penalty." Appellant contends that the Comptroller incorrectly modified his federal adjusted gross income, an amount that, he insists, he had been "required by law" to carry over to his Maryland return. He also maintains that, because the Comptroller adjusted his Maryland tax return, then he is no longer responsible for that return so as to be subject to a penalty for filing a frivolous return. Appellant also reasons that, because of the Comptroller's adjustments, he bears no responsibility for the adjusted return.

Asserting that the question of the validity of a tax return is one of law, appellant maintains that his return, based on the entry of his adjusted gross income from his federal return, is valid, and refers us to the opinions of federal intermediate appellate courts that purport to validate a "zero return." [18] *See United States v. Moore*, 627 F.2d 830 (7th Cir.1980) and *United States v. Long*, 618 F.2d 74 (9th Cir.1980).

Certainly, the question of whether a filing constitutes a "return" is a legal question. *See United States v. Moore*, 627 F.2d at 834. The United States Tax Court in *Beard v. Comm'r*, 82 T.C. 766, 777–79 (1984), articulated a four-part test to gauge whether a filing constituted a "return":

> The Supreme Court test to determine whether a document is sufficient for statute of limitations purposes has several elements: First, there must be sufficient data to calculate tax liability; second, the document must purport to be a return; third, there must be an honest and reasonable attempt to satisfy the requirements of the tax law; and fourth, the taxpayer must execute the return under penalties of perjury.

*Beard v. Comm'r*, 82 T.C. 766, 777 (1984), *aff'd*, 793 F.2d 139 (6th Cir.1986).

---

**18.** A " 'zero return' is a completed tax form that lists a zero for each line of income, adjustments, and expenses." *In re McKay*, 430 B.R. 246, 247 n. 2 (Bankr.M.D.Fla.2010).

We have previously rejected the assertion that the Comptroller is bound to accept the figure, even a "zero," that is reflected as the adjusted gross income on appellant's federal filings. We now conclude that the Tax Court did not err in ruling that the "zero" returns were frivolous.

In *United States v. Long,* the Ninth Circuit held that a "zero return" filed by the taxpayer presented sufficient "information relating to the taxpayer's income from which the tax can be computed." *Long,* 618 F.2d at 75. In *Moore,* the Seventh Circuit observed in *dicta* that:

> The Ninth Circuit is clearly correct in stating that a tax liability could be computed from zeroes, or from small amounts. The fact that the information is inaccurate only means that the tax owed, if any, will be wrong, not that it cannot be calculated. When the income information is incomplete, a more difficult problem is presented, but as long as a total income figure is given, the I.R.S. could compute the tax.

*United States v. Moore,* 627 F.2d at 835.[19] Appellant's theory, and reliance on *Long* and *Moore,* appears to be that, as long as his tax liability can be computed from zeros, he cannot be viewed as not filing a return.

The Ninth Circuit's holding in *Long* has not convinced many other courts. In *In re McKay,* 430 B.R. 246, 250–51 (Bankr. M.D.Fla.2010), the bankruptcy court expressed its disagreement with *Long,* finding the Ninth's Circuit's reasoning "unpersuasive." The United States Tax Court, relying on a decision by the Tenth Circuit, similarly rejected the holding in *Long. Laue v. Commissioner,* T.C. Memo 2012–105, *5 (2012)

---

**19.** The Seventh Circuit upheld Moore's convictions for failing to file income tax returns. The court noted that the "mere fact that a tax could be calculated from information on a form, however, should not be determinative of whether a form is a return." The court added that "it is our view that when it is apparent that the taxpayer is not attempting to file forms accurately disclosing his income, he may be charged with failure to file a return." *United States v. Moore,* 627 F.2d 830, 835 (7th Cir.1980). While *Moore* gives encouragement to appellant because it agrees with *Long's* logic, the Seventh Circuit's holding runs clearly in favor of the government.

(quoting *United States v. Rickman,* 638 F.2d 182, 184 (10th Cir.1980)). The decision in *United States v. Mosel,* 738 F.2d 157 (6th Cir.1984) is instructive. Mosel, "submitted to the government a Form 1040 tax return ... on which he indicated that he had zero income from wages ... that he had no income taxes, and that he was entitled to a refund on all the taxes which had been withheld[.]" *Mosel,* 738 F.2d at 158. The government, of course, disagreed.

Mosel was prosecuted and convicted, *inter alia,* on two counts of willfully failing to file income tax returns. In his defense, one of his claims was that his convictions were improper "because he did submit a return indicating that he owed no taxes." *Id.* Mosel relied on *Long* to buttress this argument. The Sixth Circuit was not persuaded when it entertained Mosel's direct appeal:

> Upon consideration, we reject the position of the Ninth Circuit and hold instead that the Form 1040 submitted was properly construed as no return because of its failure to include any information upon which tax could be calculated. Accordingly, we align ourselves with those circuits which have specifically considered and rejected the Ninth Circuit's decision in *Long. United States v. Rickman,* 638 F.2d 182 (10th Cir.1980); *United States v. Moore,* 627 F.2d 830 (7th Cir.1980), *cert. denied,* 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981); *see also United States v. Smith,* 618 F.2d 280 (5th Cir.), *cert. denied,* 449 U.S. 868, 101 S.Ct. 203, 66 L.Ed.2d 87 (1980); *United States v. Grabinski,* 558 F.Supp. 1324 (D.Minn.1983). We particularly agree with the Seventh Circuit's observation in *United States v. Moore* that

> ... [I]t is not enough for a form to contain some income information; there must also be an honest and reasonable intent to supply the information required by the tax code.... In our self-reporting tax system the government should not be forced to accept as a return a document which plainly is not intended to give the required information.

627 F.2d at 835.

Although Mosel's argument has some surface appeal in that the symbol zero has mathematical meaning, we conclude that no reasonable person employing such a symbol in these circumstances could understand that he had submitted the information which is required in a tax return. Mosel's 1980 Form 1040 might reasonably be considered a protest, but under no circumstances can it be rationally construed as a return.

*United States v. Mosel,* 738 F.2d at 158.

More recently, the Eighth Circuit stated that a taxpayer "can be guilty of failure to file a tax return even if he actually files a form with the I.R.S. if that form does not contain 'sufficient information [ ] from which the IRS can calculate tax liability.'" *United States v. Marston,* 517 F.3d 996, 1001 (8th Cir.2008) (quoting *United States v. Grabinski,* 727 F.2d 681, 686 (8th Cir.1984)). The Eighth Circuit added:

Applying this standard, courts have held that a return that contains only zeros and no information regarding gross income or deductions claimed or only protest information is not considered a valid "tax return," so that a person may be convicted for willfully failing to file a return.

*Marston,* 517 F.3d at 1001 (quoting *Grabinski*). *See also, e.g., Waltner v. United States,* 679 F.3d 1329, 1333 (Fed.Cir.), *cert. denied,* —— U.S. ——, 133 S.Ct. 319, 184 L.Ed.2d 155 (2012).

Section 13–705 of the Tax–General Article provides a penalty for a frivolous income tax return:

**§ 13–705. Frivolous income tax return.**

(a) *Penalty.*—The Comptroller shall assess a penalty not exceeding $500 if:

(1) an individual, as defined under § 10–101 of this article, files what purports to be an income tax return, but which:

(i) does not contain information on which the substantial correctness of the tax may be determined; or

(ii) contains information that, on its face, indicates the tax reported on the return is substantially incorrect; and

(2) the conduct of the individual is due to:

(i) a desire, apparent on the face of the return, to delay or impede the administration of the provisions of Title 10 of this article; or

(ii) a position that is frivolous because the position:

1. has no basis in law or fact;

2. is patently unlawful; and

3. does not involve a legitimate dispute or reflect an inadvertent mathematical or clerical error.

(b) *Additional to other penalty.*—The penalty under subsection (a) of this section is in addition to any penalty assessed under § 13–701 of this subtitle.

Appellant's challenges to the Tax Court's affirmance of the frivolous return penalties are baseless. The filing of "zero return" tax forms clearly meets the requirements of TG § 13–705.

### *De Novo Proceedings in the Tax Court*

██ Appellant complains that he was not afforded a *de novo* hearing by the Maryland Tax Court, as defined by Section 32 and mandated by TG § 13–523 and COMAR 03.01.01.04 H(1).[20] This complaint lacks merit, because the

---

20. Section 13–510 of the Tax–General Article provides in relevant part:

§ **13–510. Appeal to Tax Court.**
(a) *In general.*—Except as provided in subsection (b) of this section and subject to § 13–514 of this subtitle, within 30 days after the date on which a notice is mailed, a person or governmental unit that is aggrieved by the action in the notice may appeal to the Tax Court from:
(1) a final assessment of tax, interest, or penalty under this article;
(2) a final determination on an application for revision or claim for refund under § 13–508 of this subtitle;

\* \* \*

(c) *Timely filing of appeal.*—An appeal to the Maryland Tax Court under this section shall be deemed to be filed within the time allowed for the appeal if a written petition is mailed to the Maryland Tax Court with a postmark date within the time allowed for the appeal.
Md.Code (1988, 2010 Repl.Vol.), § 13–510 of the Tax General Article.
COMAR 03.01.01.04(h)(1) provides:
**H. Appeals.**

Maryland Tax Court, in fact, conducted a *de novo* hearing and afforded appellant the process required under the Tax–General Article.

The "final agency action subject to judicial review" is the decision of the Maryland Tax Court and not that of the Comptroller. Thus, "under § 13–532(a)(1) of the Tax–General Article, only a *final* order of the Tax Court is subject to judicial review." *Kim v. Comptroller,* 350 Md. at 533, 714 A.2d 176. Article 1 of the Maryland Code governs "Rules of Interpretation." Article 1, § 32, relied upon by appellant, defines "*de novo*" and provides:

### § 32. *"De Novo"* defined.

(a) *In general.*—Except as provided in subsection (b) of this section, in a statute providing for *de novo* judicial review or appeal of a quasi-judicial administrative agency action, the term "*de novo*" means judicial review based upon an administrative record and such additional evidence as would be authorized by § 10–222(f) of the State Government Article.

By its terms, this provision addresses judicial review of administrative agency action, not the review of the Comptroller's actions by the Tax Court, a tribunal of the executive branch. We reiterate that, while denominated a "court," the Maryland Tax Court remains an administrative agency, and Article 1, § 32 does not apply.

The Tax Court's proceedings are firmly embraced within the concept of a "*de novo*" adjudication. This Court has explained the nature of a trial *de novo* as follows:

A *de novo* proceeding is one that starts fresh, on a clean slate, without regard to prior proceedings and determinations. "A true trial *de novo* ... puts all parties back at 'square one' to begin again just as if the adjudication appealed from had never occurred." *General Motors v.*

---

(1) A person dissatisfied with the final determination may appeal to the Maryland Tax Court for a *de novo* review within 30 days from the date of the notice of final determination.

*Bark,* 79 Md.App. 68, 79 [555 A.2d 542] (1989). In *Boehm v. Anne Arundel County,* 54 Md.App. 497 [459 A.2d 590] (1983), we explained what constitutes a *de novo* hearing:

> A trial or hearing *"de novo"* means trying the matter anew the same as if it had not been heard before and as if no decision had been previously rendered. Thus, it is said that where a statute provides that an appeal shall be heard *de novo* such a hearing is in no sense a review of the hearing previously held. . . .

*Mayer v. Montgomery County,* 143 Md.App. 261, 281–82, 794 A.2d 704 (2002) (citations omitted). By hearing evidence and argument, the Tax Court was fulfilling its obligation to conduct a *de novo* hearing. Indeed, Tax–General § 15–523 dictates that "[a]n appeal before the Tax Court shall be heard de novo and conducted in a manner similar to a proceeding in a court of general jurisdiction sitting without a jury." For this reason, the Tax Court heard testimony and argument in the same manner as a nonjury trial, with the attendant testimony, admission of evidence, argument and opportunity for cross-examination.

### *Admission of Evidence—Due Process*

 Appellant complains that evidence from the administrative record was not forwarded to the Tax Court, as required by TG § 13–520. He asserts:

> Judge Silberg did not benefit from the expertise of an administrative body at the pre-judicial stage because the administrative record was not provided by the Comptroller as required by TG § 13–520 and Judge Silberg refused to consider the final determination issued by the Comptroller during the MTC hearing.

> \* \* \*

> Clearly, Judge Silberg did not rely on the agency's fact-finding results and admittedly made his decision on evidence presented at the MTC hearing. Therefore, in the absence of an administrative record and Judge Silberg's admitted

independent ruling, the MTC did not provide petitioner with a *de novo* review.

He then complains that the "acceptance of this new evidence by the MTC was a clear violation of MD Rule 5–103(a)(1)."

This contention is without merit. Our discussion of the Tax Court's role and the nature of its *"de novo"* function and responsibility to create a record forecloses appellant's argument. Moreover, we note, appellant's citation to Maryland Rule 5–103(a)(1) is misplaced because the "Tax Court is not bound by the technical rules of evidence." TG § 13–524. Appellant, as he complains, was not "blind-sided" by the admission of evidence at the hearing before the Tax Court. Instead, he was afforded the procedure that he sought. It is long-established:

> Appellant's tax assessment is *prima facie* correct. TG § 13–411. The burden is upon the taxpayer to show error in the assessment. *Fairchild Hiller Corp.* [*v. Supervisor of Assessments for Washington County* ], 267 Md. [519] at 523, 298 A.2d 148 [ (1973) ] (citing *State Tax Comm'n v. C. & P. Tel. Co.*, 193 Md. 222, 66 A.2d 477 (1949)). "Absent affirmative evidence in support of the relief being sought or an error apparent on the face of the proceeding from which the appeal is taken, the decision, determination, or order from which the appeal is taken shall be affirmed." T.G. § 13–528(b). Accordingly, [the Comptroller] had no duty to present affirmative evidence supporting its assessment, in addition to the assessment itself and the underlying methodology, but rather, the burden was on appellee to show error or to present evidence that appellant's assessment was incorrect.

*Comptroller v. Clise Coal, Inc.*, 173 Md.App. 689, 698, 920 A.2d 561 (2007). *See also Classics Chicago, Inc. v. Comptroller,* 189 Md.App. 695, 707, 985 A.2d 593 (2010) (recognizing agency's decision is *prima facie* correct and presumed valid, court reviews agency's decision in light most favorable to it).

We likewise discern no merit to appellant's complaint that he was denied due process by the Maryland Tax Court or the

other tribunals that have considered his challenges to the Comptroller's actions. Appellant received an informal hearing to review the assessments at issue, was granted a hearing before the Maryland Tax Court, and then has received judicial review. He was permitted to introduce evidence before the Tax Court and to cross-examine the Comptroller's witness. We have reviewed the record in this case and conclude that appellant's due process complaint lacks any merit.

### *Fifth Amendment*

 Appellant complains that he was forced to testify against his will by the Tax Court in violation of his Fifth Amendment right to be free from self-incrimination. Arguably, this issue is not preserved for appellate review. In the case before us, our reading of the transcript discloses that appellant did not even mention "Fifth Amendment" or claim any privilege against self-incrimination. Assuming that this question were preserved, we consider appellant's Fifth Amendment challenge to be without merit.

The transcript reflects the following relevant colloquy:

JUDGE SILBERG: Hold on. Mr. Bert, are you testifying today?

MR. BERT: No.

JUDGE SILBERG: You're not going to testify?

MR. BERT: No. I'm presenting evidence and law, that's it.

JUDGE SILBERG: That's testimony. Please stand and raise your right hand.

MR. BERT: How is that testimony? I represent myself, I'm ...

JUDGE SILBERG: You're not going to testify?

MR. BERT: No.

JUDGE SILBERG: And you're not going to allow any cross examination?

MR. BERT: No. I'm submitting evidence and law.

\* \* \*

JUDGE SILBERG: Because that's not the way our Court works. If you're here today to present your case, you're going to be sworn in and we're going to have testimony and we're going to proceed.

MR. BERT: Is Mr. Langbaum going to be sworn in?

JUDGE SILBERG: Mr. Langbaum is the attorney. He is not going to be presenting any evidence, he's just going to be asking questions.

MR. BERT: He is . . .

JUDGE SILBERG: And if . . .

MR. BERT: . . . presenting evidence. He has a whole table of evidence.

\* \* \*

JUDGE SILBERG: You are a party, he is not a party. He is the representative of the State. Now . . .

\* \* \*

JUDGE SILBERG: You today are going—you're refusing to testify?

MR. BERT: I'm not refusing to testify, I'm saying that I don't choose to testify. I thought I had the choice of not testifying.

JUDGE SILBERG: You do. You can leave and dismiss your appeal.

MR. BERT: Well how am I going to dismiss my appeal when I'm here just to represent—all I'm here to do is submit evidence.

JUDGE SILBERG: I don't think that the Court is going to allow you to introduce documents into evidence and refuse to testify. If you're going to be here and you want to present your case, you have to allow the opportunity for Mr. Langbaum—you don't have to say anything beyond introducing your documents if that's the way you want to present your case. But you have to allow Mr. Langbaum to ask you questions under oath.

MR. BERT: My question then to the Court is, why do I have to testify if Mr. Langbaum doesn't? I'm representing Colvin Bert . . .

There is no question that a civil litigant enjoys a Fifth Amendment privilege against self-incrimination. The Supreme Court has observed:

> The Fifth Amendment declares in part that "No person * * * shall be compelled in any Criminal Case to be a witness against himself". This guarantee against testimonial compulsion, like other provisions of the Bill of Rights, "was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed." . . . This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure.
>
> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.

*Hoffman v. United States*, 341 U.S. 479, 485–86, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (citations and internal quotation marks omitted). The Court in *Hoffman* pointed out, however, that there are instances where the privilege does not come into play:

> But this protection must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer. . . . The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. . . . To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why

it cannot be answered might be dangerous because injurious disclosure could result.

*Hoffman*, 341 U.S. at 486–87, 71 S.Ct. 814 (citations omitted). The "witness must be subject to a real danger of self-incrimination, not merely remote and speculative possibilities." *Burns v. Comm'r*, 76 T.C. 706, 707 (1981) (citing *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Hoffman v. United States*, 341 U.S. at 486, 71 S.Ct. 814; *Ryan v. Comm'r*, 67 T.C. 212, 217 (1976), *aff'd*, 568 F.2d 531 (7th Cir.1977)). We are mindful that a civil tax matter can ripen into a criminal prosecution, and so a Fifth Amendment issue is a reasonable concern. Notwithstanding, as noted by the Eleventh Circuit:

> We stress, however, that it is the role of the district court, not the taxpayer, to evaluate the taxpayer's claim of incrimination and determine whether it is reasonable. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified...." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). Whether there is sufficient hazard of incrimination is of course a question for the courts asked to enforce the privilege.

*United States v. Argomaniz*, 925 F.2d 1349, 1355 (11th Cir. 1991) (citation and internal quotation marks omitted). The Court of Appeals has further noted the trial court's role in assessing the hazards to a witness of the potential for self-incrimination:

> To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim "must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence." ...

*Richardson v. State,* 285 Md. 261, 266–67, 401 A.2d 1021 (1979) (citations omitted).[21] This function is not served by a blanket refusal to testify. In *United States v. Verkuilen,* 690 F.2d 648, 654 (7th Cir.1982), the Seventh Circuit rejected "blanket" claim of privilege and stated that the "taxpayer must make a colorable showing that he is involved in some activity for which he could be criminally prosecuted in order to validly claim the Fifth Amendment privilege on his income tax return."

Appellant has made no such demonstration. Aggrieved at being given the choice between the dismissal of his appeal to the Tax Court, in which he shoulders the burden of moving forward and making a record, and actually substantiating his challenge to the Comptroller's assessment, appellant chose to testify. We consider the following observation by the United States Tax Court to be instructive:

> Moreover, upon considering the innocuous character of the questions, which merely requested admissions regarding petitioner's places of employment and amount of gross wages received from each, we are unable to ascertain any basis for petitioner's Fifth Amendment objection. Aside from his naked assertion of the privilege, there is no indication that petitioner had any legitimate concern regarding

---

**21.** The Court outlined the protocol to be observed:

Our predecessors clearly set forth in numerous cases the procedures to be followed in determining when a witness may refuse to testify on grounds that the evidence adduced may incriminate him. The witness should first be called to the stand and sworn. *Midgett v. State,* 223 Md. 282, 289, 164 A.2d 526, 529 (1960), *cert. denied,* 365 U.S. 853, 81 S.Ct. 819, 5 L.Ed.2d 817 (1961). Interrogation of the witness should then proceed to the point where he asserts his privilege against self-incrimination as a ground for not answering a question. *Shifflett v. State,* 245 Md. 169, 173–74, 225 A.2d 440, 443 (1967). If it is a jury case, the jury should then be dismissed and the trial judge should attempt to "determine whether the claim of privilege is in good faith or lacks any reasonable basis." *Midgett v. State, supra,* 223 Md. at 289, 164 A.2d at 530. If further interrogation is pursued, then the witness should either answer the questions asked or assert his privilege, making this decision on a question by question basis. *Royal v. State,* 236 Md. 443, 447, 204 A.2d 500, 502 (1964).

*Richardson v. State,* 285 Md. 261, 265, 401 A.2d 1021 (1979).

criminal prosecution. Although petitioner cannot be held to a standard of specificity that would surrender the protection provided by the Fifth Amendment, we do not believe that he was subject to any danger of self-incrimination and find that his Fifth Amendment claim was wholly frivolous.

*Burns v. Comm'r,* 76 T.C. 706, 708 (1981) (citations omitted). We discern no basis for relief based on appellant's Fifth Amendment claim.

### *Burden of Proof*

Citing IRC § 6703, appellant insists that the Comptroller has not satisfied its burden of proof. He contends:

> IRC § 6702 is the federal frivolous income tax return penalty that is synonymous with Maryland's TG § 13–705(a). However, IRC § 6703(a) Burden of proof states:
>
>> In any proceeding involving the issue of whether or not any person is liable for a penally under section 6700, 6701, or 6702, the burden of proof with respect to such issue shall be on the Secretary.
>
>> Therefore, likewise, Bormuth has the burden of proving that Bert has filed a frivolous return that has no basis in law or fact, is patently unlawful, and does not involve a legitimate dispute or reflect an inadvertent mathematical or clerical error. Hence, Gorman's Final Determination is in err when she says Bert has failed his burden of proof.

We are not persuaded. In this case, the Comptroller has met its burden of demonstrating that appellant either filed frivolous returns or understated his tax liability. In the hearing before the Tax Court, the Comptroller introduced both the original Maryland Tax Form 503 for 1999, the amended Form 502X for that year, the federal Form 1040X for 1999, the original Maryland Form 503 for 2000, as well as copies of various W–2 Forms. In addition, the Comptroller introduced computer records for tax years 2001, 2002 and 2004. Pamela Porter, a "liaison between the Comptroller's Office and the Attorney General's Office," in income tax matters, authenticated these computer printouts:

[COMPTROLLER'S COUNSEL:] Ms. Porter, can you identify Exhibit 8?

A. Yes, sir. This is an excerpt from the Comptroller's computer records. It's W–2 information for Mr. Bert for the years 2001 and 2002.

Q. How is this information obtained by the Comptroller?

A. It is submitted to the Comptroller by the employer.

Q. In what format?

A. In an electronic format.

Comptroller's Exhibit 9 was similarly authenticated. When appellant objected, Ms. Porter testified that the documents "come from the employer electronically" and that they are then printed out. She responded "Yes" when asked whether "the information that is submitted electronically by an employer [is] maintained by the Comptroller in the ordinary regular course of business."

In *Kloes v. United States*, 578 F.Supp. 270, 274 (W.D.Wis. 1984), for example, the district court upheld the assessment of frivolous penalties, and determined that the "government has satisfied its burden ... by submission of [taxpayer's] return and the letter which accompanied it. On their face, these documents clearly show the frivolous nature of plaintiff's objections."

The decision in *Podhola v. United States*, 585 F.Supp. 1305 (E.D.Mich.1984) is instructive. The taxpayers in that case "deleted the word 'income' and substituted the word 'receipts' on the printed form. They also altered line 24 of the return to read 'non-taxable receipts,' and treated the amount entered on this line, which represented over 90% of their income, as a deduction from 'receipts' " The district court upheld a penalty for filing a frivolous return, explaining that the IRS had met its burden of proof:

Sections 6702(a)(1)(B) and 6702(a)(2)(A) provide that a $500 penalty will be imposed upon any person who files a tax return that "contains information that on its face indicates that the self-assessment is substantially incorrect," or indicates a "position that is frivolous." The alterations that

plaintiffs made to the 1040 form they submitted in this case is the kind of conduct that falls squarely within the prohibition created by this statute. The Court holds that the government has met its burden of proof for establishing frivolity.

*Podhola v. United States,* 585 F.Supp. at 1306 (footnotes omitted). Although the taxpayer conduct, in *Podhola,* differs from that before us, the court's rationale applies with equal force to the case where the evidence, and argument pressed by the taxpayer, are the kinds of actions that substantiate the imposition of a frivolous return penalty. *See Brown v. United States,* 35 Fed.Cl. 258, 269 (Fed.Cl.1996) (stating that, "[t]o assess § 6702 penalties, the government need only show that filed tax returns are frivolous, 26 U.S.C. § 6703(a) (1994), which is clear from plaintiff's amended returns."), *aff'd,* 105 F.3d 621 (Fed.Cir.1997).

## *Conclusion*

This is not a close case. The Tax Court neither erred nor abridged appellant's due process rights by conducting a *de novo* hearing and affirming the actions of the Comptroller with respect to the tax years and penalties at issue. Neither did the Tax Court abridge appellant's Fifth Amendment rights. We have also considered appellant's remaining contentions, and find them to be without merit.[22]

---

**22.** Appellant asserts that the Tax Court erred by issuing a "generic order." We disagree. The Tax Court's order incorporated its ruling from the bench at the conclusion of the hearing. This ruling is adequate to inform appellant of the salient issues, the rationale of the Tax Court's decision, and provide an adequate basis for judicial review. There is no merit to appellant's complaint. In the final analysis, the main issues—shopworn arguments that have been advanced to evade taxes in numerous fora—were more than adequately dealt with by the Tax Court.

The Tax Court did not "erroneously interpret TG § 13–705(b) when it orally ruled that a TG § 13–701 penalty was not a prerequisite to a TG § 13–705(a) penalty." By its terms, TG § 13–705(b) provides that the penalty "is in addition to any penalty assessed under § 13–701[.]"

In his reply brief, and citing TG § 13–1101(d)(2), appellant complains of "duplicate frivolous return penalties." He also complains that the

JUDGMENT AFFIRMED.

APPELLANT TO PAY COSTS.

Comptroller did not give him credit for his 2001 and 2002 withholdings. We decline to address arguments that are advanced for the first time in a reply brief.